THE TOWN OF SHELBY AND W. H. JENNINGS *v.* CLEVELAND MILL AND POWER COMPANY.

(Filed 11 May, 1911.)

1. Water and Water Courses—Sewers—Pollution—Statutory Regulation—Constitutional Law.

Revisal, sec. 3051, regulating sewers discharging into "any drain, creek or river from which a public drinking-water supply is taken," etc., is within the police power of the Legislature, enacted for the public health, and is constitutional and valid.

2. Water and Water Courses—Sewers—Pollution—Statutory Regulations—Prescription—Vested Rights.

No right by prescription can be acquired so as to defeat the operation of a statute made for the preservation of the public

SHELBY *v.* POWER CO.

health, as, in this case, the right to continue in maintaining a sewerage system which empties into a drain or stream from which a public water supply is obtained, in violation of the terms of a statute. Revisal, 3051.

### 3. Same—User and Non-user.

No title can be acquired against the public by user alone, nor lost to the public by non-user, unless by legislative enactment, and Revisal, sec. 3051, being passed in the interest of the public health for regulating sewers emptying into waters from which the public drinking supply is taken, no prescriptive right can be available which would exempt the one claiming it from the operation of the statute.

### 4. Water and Water Courses—Sewers—Pollution—Statutory Regulations—Nuisance.

Emptying sewers into such streams as are prohibited by statute, Revisal, sec. 3051, is a nuisance, and the courts will not inquire as to whether the facts in any particular case result in the pollution of the stream, as such matters are well within the regulation of the Legislature in the exercise of its police powers for the benefit of the public health, and the language of the statute is controlling.

### 5. Police Powers—Legislative Powers—Subsequent Legislation.

No Legislature can bind a subsequent one in its exercise of the powers conferred in regard to the pollution of streams from which the public drinking supply is taken. Revisal, sec. 3051.

### 6. Police Powers—Legislative Powers—Waiver.

The right to exercise its police powers for the general good is inherent in the State for the protection of the people and is of such character that the State may not waive or divest itself thereof.

### 7. Water and Water Courses—Sewers—Pollution—Statutory Regulations—Lawful Taking of Property.

As no prescriptive right can be acquired by one in emptying sewers into streams from which a public drinking-water supply is obtained, there can be no taking of property for public use under the inhibition of Revisal, 3051, and nothing to compensate for it, the State only prescribing the conditions under which the stream may be used for sewer purposes.

APPEAL from *Biggs, J.,* at the Spring Term, 1911, of CLEVE-LAND.

The plaintiffs seek to enjoin the defendant from turning its raw sewage into the French Broad River some eight miles above the intake of the Shelby Water Works System.

The defendant answers, admitting the material allegations of the complaint, and that it does empty the raw sewage from its mills and water-closets into said river, and claims prescriptive right to do so, and further avers that the water supply of the plaintiff town is not contaminated thereby. The plaintiffs demur to the answer. . The court sustained the demurrer and gave judgment against defendant, which excepted and appealed.

*Bickett & White, Webb & Mull for plaintiffs.*

*Burwell & Cansler, John F. Schenck and Ryburn & Hoey for defendant.*

BROWN, J.   The plaintiffs do not rely upon the principles of the common law, but rest their case solely upon section 3051 of the Revisal of 1905, which reads as follows: "No person or municipality shall flow or discharge sewage into any drain, brook, creek or river from which a public drinking-water supply is taken, unless the same shall have been passed through some well-known system of sewage purification approved by the State Board of Health; and the continual flow and discharge of such sewage may be enjoined upon application of any person." A violation of this statute is made a misdemeanor, punishable by fine and imprisonment by section 3858.

The defendant contends, as a matter of law, that it cannot be restrained from emptying its raw sewage in the river in question, because that, prior to the enactment of the statute forbidding it, it had acquired the prescriptive right to do so, and that consequently the statute, if it was ever intended to apply to such a case, is void to the extent that it undertakes to deprive the defendant of a valuable property right without making compensation therefor.

The propositions sought to be maintained in their brief by the learned counsel for defendant are:

(1) Whether the right to pollute a stream can be acquired by prescription; and, if it can,

(2) Whether, when such right has been acquired, it can be destroyed by a statute, making no provision for compensation therefor.

The statute upon which this action is founded is one of several

laws enacted in pursuance of what appears to be an intelligent purpose upon the part of the General Assembly to protect the health and well-being of the citizens of the State by guarding the watersheds and public water supplies of the cities and towns of the State from contamination, as far as possible.

The value and wisdom of such legislation is established by experience and needs no defense at our hands, even if it was a subject within our domain. It is in line with the most enlightened legislation of Great Britain and of States of this Union. The preservation of the public health, as well as public morals, is a duty devolving on the State, the discharge of which is denominated an exercise of the police power, and it is under such power that such legislation is sustained and enforced.

This particular statute was considered by this Court in the case of *City of Durham v. Eno Cotton Mills,* 141 N. C., 615, and 144 N. C., 706, and its constitutionality sustained at all points in well-considered opinions by *Mr. Justice Walker,* in which practically all the authorities are cited and discussed. It is unnecessary to review them here.

The only point not considered in those opinions is the contention of the defendant that by over twenty years' continuous usage it has acquired a prescriptive right to empty its raw sewage into the river, with which the State has no power to interfere without making provision for compensation.

There are authorities to the effect that as against a private individual lower down on the stream the right to pollute it to a greater extent than is permissible at common law may be acquired by prescription by an upper riparian owner. But we are not now dealing with the rights of riparian owners, but with the rights of the public at large as represented by the General Assembly.

It is well settled that, unless by legislative enactment, no title can be acquired against the public by user alone, nor lost to the public by non-user. *Commonwealth v. Moorehead,* 4 Am. St., 601, and cases cited 22 Am. & Eng., p. 1190. Public rights are never destroyed by long-continued encroachments or permissive trespasses. If it is in the power of the General Assembly, in the exercise of its police power, as we have held in the *Durham case,*

to enact this law and make its violation a misdemeanor, it neces-
sarily follows that the defendant could not acquire a right by
prescription which would exempt it from the operation of the
statute.

Whether the pollution of this stream by emptying raw sewage
into it was a nuisance at common law, it is unnecessary to con-
sider.

Since the passage of the statute it may be classified as a public
nuisance unless the provisions of the act be complied with. The
learned counsel properly admits that if a stream should be pol-
luted to the extent and under such circumstances as to create a
public nuisance, then no prescription would justify such nui-
sance.

The power of the General Assembly to pass all needful laws,
except when barred by constitutional restrictions, is plenary, and
the Legislature has the power to declare places or practices to
the detriment of the health, morals or welfare of the community
public nuisances, although not such at common law.

This seems to be well settled. *Mugler v. Kansas,* 123 U. S.,
623; *Lawton v. Steel,* 119 N. Y., 226; *S. v. Tower,* 68 L. R. A.,
406.

The right which the State is seeking to enforce through this
statute is a public right, a right to protect the health of the
people of the State. As against such public rights, prescription
cannot run. There is no such thing as a prescriptive right to
maintain a public nuisance. Joyce on Nuisances, sec. 51; Cyc.,
29, 1207; Jones on Easements, sec. 178; McMoran & Willis on
Sewers and Drains, 233.

In *Com. v. Upton,* 6 Grey (Mass.), 473-476, the Court says:
"It is therefore immaterial, so far as the government is con-
cerned, in the administration of the law for the general welfare,
how long a noxious practice may have prevailed or illegal acts
been persisted in. Easements may be created in lands and the
rights of the individuals may be wholly changed by adverse use
and enjoyment if it is sufficiently protracted, but lapse of time
does not equally affect the rights of the State." See, also, cases
collected 3 Am. & Eng. Ann. Cases, p. 25. The General Assembly

cannot grant a right to maintain a public nuisance of this character which a succeeding General Assembly could not repeal.

The State cannot divest itself of the right to exercise its police power for the general good. Such power is conceded to be one inherent in the State for the protection of the public, and of such character that the State may not waive or divest itself of the right to exercise it. *S. v. Holman,* 104 N. C., 861; 1 Abbot on Mun. Corp., 209; *Re O'Brien,* 1 A. & E., Ann. Cases, 373; *Portland v. Cook,* 48 Or., 550; *Miles City v. Board of Health,* 25 L. R. A., 591.

As said by the Supreme Court in *Stone v. Mississippi,* 101 U. S., 841, "All agree that the Legislature cannot bargain away the police power of the State."

It follows, from these and many other authorities, that the defendant could not acquire any right by prescription or otherwise which would prevent the General Assembly of the State at any time from exercising its police power to regulate the discharge of sewage into the French Broad River.

The issue attempted to be raised by the pleadings that the stream is not dangerously polluted by the raw sewage poured into it from a large mill settlement working hundreds of operatives can be of no avail to defendant.

That is a matter for the judgment of the Legislature. Such legislation is preventive, and to limit it to cases where actual injury is shown to have occurred would be to deprive it of its most effective force. To be of value such laws must be able to restrain acts which have a tendency to produce public injury.

The police power of a State is to be exercised for the general good, and every intendment is to be made in favor of the lawfulness of regulations, such as the statute under consideration, intended to protect the public health and safety. It is not the province of the judicial authority, except in clear cases, to obstruct or interfere with the exercise of such power.

The General Assembly, chosen biennially by the people, are better judges than we are of what regulations are necessary to promote the public health and comfort of the citizens of the State.

The Supreme Court of the United States, which has always upheld every reasonable exercise of the police power of the States, has said: "The possession and enjoyment of all rights are subject to such reasonable conditions as may be deemed by the governing authority of the country essential to the safety, health, peace, good order and morals of the community. Even liberty itself, the greatest of all rights, is not an unrestricted license to act according to one's own will." *Crowley v. Christensen,* 137 U. S., 86. If a regulation enacted by the Legislature for the protection of the public health bears, as this does, a real and substantial relation to that object, the courts will not strike it down, although it may appear to bear hard upon some individual.

The second proposition of the defendant, that the right to drain its raw sewage into the river cannot be taken from it without compensation, necessarily falls with the first.

As the defendant could acquire no vested right of the character claimed, there is no taking of property for a public use, and nothing to compensate the defendant for.

The State takes no right from the defendant, but only prescribes the conditions upon which it may use the river for its private purposes.

The present case is governed by principles that do not at all involve an exercise of the power of eminent domain. As said by the Supreme Court of the United States in *Mugler v. Kansas,* 123 U. S., "The power which the States have of prohibiting such use by individuals of their property as will be prejudicial to the health, the morals, or the safety of the public, is not—and, consistently with the existence and safety of organized society, cannot be—burdened with the condition that the State must compensate such individual owners for pecuniary losses they must sustain by reason of their not being permitted, by a noxious use of their property, to inflict injury upon the community." See, also, Sedgewick on Statutory and Const. Law, pp. 434, 435; *Reduction Co. v. Sanitary Works,* 199 U. S., 307; *Durham v. Cotton Mills,* 141 N. C., 640.

The judgment of the Superior Court is
Affirmed.