The action was instituted to restrain the defendants from discharging raw sewage into Tar River a short distance below the town without having the same properly treated as required by statute, Public Laws 1911, ch. 62, sec. 33, etc.
In the complaint it is, among other things, alleged that defendant, a town of several thousand people situate on Tar River, maintains water-works and a sewerage system, the latter consisting of five principal sewer lines and their ramifications extending through the business district and a large part of the residential section of the town, discharging the sewer into Tar River and without having the same subjected to any treatment whatsoever for the purification thereof, etc.
2. "That, basing this allegation upon the approved teachings of modern sanitary science applied to physical conditions, such as have been hereinbefore set out, and likewise upon the conclusions arrived at, after mature consideration by the individual plaintiff above named and by those members of the North Carolina State Board of Health who, in the proper discharge of their official duties, have been called upon to take under advisement the problem in sanitation presented by continued contamination of the waters of Tar River by the discharge of raw sewage into the same above the point of intake of the water-works system of the city of Rocky Mount and the towns of Tarboro and Greenville, as set out in the preceding paragraph of this complaint, these plaintiffs aver that such contamination of the waters of said river, owing to the above present danger of the bacterial pollution thereof, in the event of an epidemic of typhoid fever or other like communicable diseases in the town of Louisburg, constitutes a continuing menace to the public health of the city of Rocky Mount and, the towns of Tarboro and Greenville, as set out in the preceding paragraph of this complaint, these plaintiffs aver that such contamination of the waters of said river, owing to the above present danger of the bacterial pollution thereof, in the event of an epidemic of typhoid fever or other like communicable diseases in the town of Louisburg, constitutes a continuing menace to the public health of the city of Rocky Mount and, in a lesser and diminishing degree, to that of the towns of Tarboro and Greenville."
That below Louisburg on said stream the towns of Rocky Mount, Tarboro, and Greenville draw their municipal water supply therefrom, and also have a sewerage system discharging into said stream below, after same has been subjected to treatment as required by law. (252) That on complaint of the authorities of Rocky Mount, and with a view of protecting the water supply of that city from *Page 301 
contamination, plaintiff board, etc., had, by resolution duly passed and communicated, and otherwise, endeavored to induce a compliance with the law on the part of defendant town and had made repeated and insistent demands thereto, but the latter had thus far failed and refused to comply, asserted their right to discharge the untreated sewage into said stream, and expressed the purpose to continue so to do. In connection with these allegations, a report of an expert was submitted, giving a description of the stream and its tributaries, the fall, volume of water, etc., and stating the sources of contamination that could reasonably be apprehended.
Defendants, admitting that they were discharging their sewage into the river without any treatment looking to its purification, and that the municipalities below were now obtaining their water supply from the river, answer the complaint and allege that they have now maintained their water supply and sewer system for thirteen years, commencing long before the cities mentioned began taking their water supply from the river; that the nearest of these towns, Rocky Mount, was by actual measurement and as the river winds, 75 miles below Louisburg, and on account of the comparatively small amount of their sewage, the volume and flow of the water, etc., there was absolutely no danger of pollution to the inhabitants of the lower towns, but that the water by the time it reached them or either of them was as well purified as it could possibly be by any known method of treatment; that this was not only true as a scientific fact, but defendant had caused the same to be tested by experts at points not more than half-way down the stream, and it was thereby ascertained that the waters of the river were as free from noxious germs, etc., as they were above Louisburg and before any sewage was discharged into the river. Defendants denied that plaintiffs or any of them had any legal right to maintain the suit, and averred, further, that they had never been given any proper hearing before the State Board of Health and that the latter had never made or supplied any plan or system to be pursued by defendants and by means of which the sewage could be properly treated, etc. To this answer plaintiff demurred, and the matter having been heard on the pleadings attached thereto, the court gave judgment that defendants be restrained unless a proper system of sewage treatment was installed and put in operation within ninety days, etc. From which judgment defendant town excepted and appealed.
after stating the case: In section 33, Laws 1911, ch. 62, a statute to collect and amend the laws more directly appertaining to the public health, it is enacted that "No person, firm, corporation, or municipality shall flow or discharge sewage above the intake into any drain, brook, creek, or river from which a public drinking-water supply is taken unless the same shall have been passed through some well-known system of sewage purification approved by the State Board of Health; and the continued flow and discharge of such sewage may be enjoined on the application of any person." This same provision, enacted in 1903, ch. 159, sec. 13, and contained in Revisal 1905, sec. 3057, has been very fully considered and upheld in several decisions of the Court: Shelby v. Power Co., 155 N.C. 196;Durham v. Cotton Mills, 144 N.C. 705; Durham v. Cotton Mills, 141 N.C. 615; and it appearing from the statements and admissions in the pleadings that defendant town has been for several years past and is now discharging its raw sewage into Tar River, and that below, on said stream and beginning not more than 75 miles as the river winds, several other towns are drawing their public drinking-water supply therefrom, the case is one coming directly within the provisions of the law, and we are of opinion that defendant has been properly enjoined.
It is urged for defendant that plaintiffs having demurred to the answer it is thereby admitted that the water supply of the lower towns is entirely beyond the danger zone, and that owing to the natural conditions prevailing, the distance, the volume and flow of the stream, etc., the water supply of the lower towns is as free from pollution as if it had been subject to any kind of known purification, etc.
It is fully recognized that, for the purpose of presenting the legal question involved, a demurrer is construed as admitting relevant facts well pleaded and, ordinarily, relevant inferences of fact necessarily deducible therefrom; but the principle is not extended to admitting conclusions or inferences of law nor to admissions of fact when contrary to those of which the Court is required to take judicial notice, and more especially when such opposing facts and conditions are declared and established by a valid statute applicable to and controlling the subject.Pritchard v. Comrs., 126 N.C. pp. 908-913; Hopper v. Covington,118 U.S. pp. 148-151; Equitable Assurance v. Brown, 213 U.S. 25; Graefv. Equitable Insurance, 160 N.Y. 119; Griffin v. R. R., 72 Ga. 423; Bramham v. Mayor, 24 Cal. 585; 6 Pl. and Pr., pp. 336-338; (254) 31 Cyc., pp. 333-337. While a demurrer might be taken as an admission that the water of Tar River reaches the lower towns without appreciable contamination from defendant's sewage, and, in proper instances, such an admission would justify a denial of any interference *Page 303 
by court process, it may not have that effect when a statute, explicit in terms and plain of meaning, absolutely forbids the discharge of untreated sewage into the stream, in another section makes such act a misdemeanor and in effect declares such conduct and the conditions thereby created an indictable nuisance. True, in the cases upholding the law heretofore cited, the distances between the upper and lower points on the river were 17 and 25 miles, respectively, and the distance here is said to be 75 miles as the river winds; but this difference, in our opinion, may not be allowed to affect the result. The conservation and protection of the public water supply are peculiarly within the police power of the State, referred very largely to the legislative discretion, entirely so with us unless it clearly offends against some constitutional principle, and the Legislature, in the exercise of such powers, having forbidden the use of such stream for the purpose and in the manner described, its decision on the facts presented must be accepted as final and defendants required to conform to the requirements of the law. Skinner v. Thomas, 171 N.C. 98; S. v. R. R.,169 N.C. pp. 295-304; Daniels v. Homer, 139 N.C. 219.
And the same answer, we think, will suffice to a kindred position insisted on, that the defendant town, situate, on the river, had installed its present system long before the lower towns had resorted to the stream for their public water supply and has operated same in the present manner for at least thirteen years without hindrance or question on the part of the health authorities or any others, and to compel defendants now to make this radical change in their system at a burdensome and unnecessary cost would be an unwarranted interference with defendant's riparian and vested rights, etc.
In so far as the mere question of time is concerned, and as between individuals, it requires an adverse user of twenty years to create a right of this character, Tise v. Whitaker, 146 N.C. 374; and, in reference to this statute, it was expressly held in Shelby v. Power Co., supra, that no length of time will justify the maintenance of nuisance of this kind as against the public. On this question, Brown, J., delivering the opinion, said: "There are authorities to the effect that as against a private individual lower down on the stream, the right to pollute it to a greater extent than is permissible at common law may be acquired by prescription by an upper riparian owner. But we are not now dealing with the rights of riparian owners, but with the rights of the public at large as represented by the General Assembly. It is well settled (255) that unless by legislative enactment, no title can be acquired against the public by user alone, nor lost to the public by non-user.Commonwealth v. Morehead, 4 Am. St., 601, and cases cited, Am. and *Page 304 
Eng., p. 1190. Public rights are never destroyed by long continued encroachments or permissive trespasses. If it is in the power of the General Assembly, in the exercise of its police power, as we have held in the Durham case, to enact this law and make its violation a misdemeanor, it necessarily follows that the defendant could not acquire a right by prescription which would exempt it from the operation of the statute."
And even vested rights having reference to the ordinary incidents of ownership must yield to reasonable interference in the exercise of police power. In that field, as stated, the judgment of the Legislature is to a great extent decisive, and must be upheld unless the statute in question has no reasonable relation to the end or purpose in view and is manifestly an arbitrary and palpable invasion of personal and private rights. Skinnerv. Thomas, supra; S. v. R. R., supra; Hadacheck v. Los Angeles,239 U.S. 394; Chicago, etc., R. R., v. Tranbarger, 238 U.S. pp. 67-77;Reinman v. City of Little Rock, 237 U.S. 171; Mo. Pac. R. R. v.Omaha, 235 U.S. 121; McLean v. Arkansas, 211 U.S. pp. 539-547.
In Skinner's case, supra, speaking of the police power, Allen, J., delivering the opinion of this Court, said: "It is the power to protect the public health and public safety, to preserve good order and the public morals, to protect the lives and property of the citizens, the power to govern men and things by any legislation appropriate to the end," citing from 9 Enc. of U.S. Reports, p. 473, and again from the Slaughterhousecases, 16 Wallace, 36: "Upon it depends the security of social order, the life and health of the citizens, the comfort of existence in a thickly populated community, the enjoyment of private and social life, and the beneficial use of property"; and, further: "The exercise of the power is left largely to the discretion of the lawmaking body, and the authority of the courts cannot be invoked unless there is an unnecessary interference with the rights of the citizens or when there is no reasonable relation between the statute enacted and the end or purpose sought to be accomplished."
In Hadacheck's case, supra, in upholding a city ordinance prohibiting the manufacturing of brick in certain localities in the city of Los Angeles, it was held, among other things, as follows: "While the police power of the State cannot be so arbitrarily exercised as to deprive persons of their property without due process of law or deny them (256) equal protection of the law, it is one of the most essential powers of government and one of the least limitable — in fact, the imperative necessity for its existence precludes any limitations upon it when not arbitrarily exercised.
"A vested interest cannot, because of conditions once obtaining, be asserted against the proper exercise of the police power. To so hold *Page 305 
would preclude development. Chicago and Alton R. R. v. Tranbarger,238 U.S. 67. There must be progress, and in its march private interests must yield to the good of the community.
"The police power may be exerted under some conditions to declare that under particular circumstances and in particular localities specified businesses which are not nuisances per se (such as livery stables, as inReinman v. Little Rock, 237 U.S. 171, and brickyards, as in this case) are to be deemed nuisances in fact and law."
In Mo. Pacific v. Omaha, supra, it was said: "In the exercise of the police power the means to be employed to promote the public safety are primarily in the judgment of the Legislature, and the courts will not interfere with duly enacted legislation which has a substantial relation to the purpose to be accomplished and does not arbitrarily interfere with personal and private rights."
In recognition of these well established principles, and on the admissions appearing of record that three populous and progressive towns lower down on the same stream are now taking their drinking-water supply from the river, beginning within a distance of 75 miles, and adverting to the sworn statements of the Board of Health and its dutiful, trained, and capable secretary, that under the conditions presented, and especially in times of epidemic, the discharge of untreated sewage by defendant imports a menace to the inhabitants of the lower towns, we are of opinion that the statute in question is a valid law and that the defendant must be held to comply with its provisions.
It is further contended that plaintiffs are not proper parties to maintain a suit of this kind, but the position cannot be sustained. We are inclined to the opinion that plaintiff board, as a public quasi-corporation charged with the duty of looking after the public health and of the statutes promotive of such purpose, have a right in their quasi-corporate name to resort to the courts of the State in enforcement of these statutes and of regulations pursuant thereto having the force of law, Salt LakeCity, etc., v. Golding, 2 Utah 319; 28 Cyc., p. 131; but the question is not necessarily presented, as the secretary of the board, in his individual name, is also a party, and, by the express provision of the law, an injunction may be obtained on the "application of any person." It is the accepted rule with us that the joinder of unnecessary parties (257) is without material effect except as to the matter of cost. Ormondv. Ins. Co., 145 N.C. 142. The presence of the Board of Health, therefore, even without the power to sue, does not prevent the efficient maintenance of the action. And the further position must be also overruled, that the Board of Health have prescribed no stated method of purification informing defendant as to how they must proceed. By the terms *Page 306 
of the statute, expressly forbidding the discharge of the sewage unless treated, etc., the defendants, and others in like cases desiring to use the stream, are made primarily actors in such cases, and it is their duty to confer with the board and ascertain a proper method before resorting to the river for the purpose. It is to the interests of municipalities desiring to make use of a stream that no arbitrary or fixed method or system should be established in advance, for, no doubt, in many instances, a modification from the more exacting method may be found reasonable, permitting the maintenance of a less burdensome and less costly system. In any event, the statute bearing on the conduct of defendant is peremptory, and they must at once confer with the Board of Health and obtain and follow the reasonable requirements prescribed for the conditions presented.
We find no error in the judgment below, and this will be certified that judgment be entered restraining defendant from discharging their untreated sewage into Tar River unless, within a definite time stated, the time fixed to be reasonable for the purpose, the method of treatment looking to the purification of the sewage shall be installed and put in operations as required by law.
Affirmed.