·THE TOWN OF SMITHFIELD AND E. S. STEVENS v. THE CITY OF RALEIGH AND GEORGE A. ISELEY, J. H. BROWN, AND ED. M. BARTON, COMMISSIONERS OF THE CITY OF RALEIGH.

(Filed 28 January, 1935.)

**Municipal Corporations E d—C. S., 7125, does not impose mandatory duty on court to restrain city from discharging raw sewage in stream.**

C. S., 7125, does not impose the mandatory duty upon the trial judge of enjoining a municipality from discharging raw sewage into a stream from which another municipality takes its water supply, and where in an action for such injunctive relief the trial court finds that the acts complained of have resulted in no injury or inconvenience to the inhabitants of complaining municipality, and that there were no facts tending to show immediate menace to them, and that the financial condition of defendant municipality is such that it could not immediately install purification plants, and that therefore the granting of the order prayed for would cause untold hardship upon the inhabitants of defendant municipality, the court's order denying the injunctive relief but providing that the judgment should not prevent the bringing of another suit for the same relief upon a change in the fundamental conditions, will be upheld on appeal.

CIVIL ACTION, before *Grady, J.,* at June Term, 1934, of WAKE.

The plaintiff alleged in substance that the town of Smithfield is situated on the banks of Neuse River; that the defendants maintain a sewerage system for the use of the citizens of the municipality, and that such system is used by residents, hotels, business houses, and hospitals of the city of Raleigh, and that through the various sewer lines of the defendant "raw sewage is discharged into Walnut Creek and Crabtree

Creek, and through said creeks flows into the Neuse River, a short distance from Raleigh, thereby polluting and contaminating the waters not only of Walnut Creek and Crabtree Creek, but also the waters of Neuse River." It was further alleged that the town of Smithfield takes its water supply from Neuse River below the points on said river where the defendants cause said raw sewage to be discharged, and that "the continued acts of defendants in the maintenance and operation of the sewer line, . . . and the discharge of raw sewage into said creeks and through said creeks into the Neuse River, constitutes a menace to the health of the citizens of the town of Smithfield; and in the event of an epidemic of typhoid fever or other contagious disease in the city of Raleigh, the citizens of Smithfield could not possibly be protected against said epidemic."

The defendants admitted that the city of Raleigh "has no improved or modern sewerage or treatment plant, but . . . the sewage emptied by the city of Raleigh into Walnut Creek and Crabtree Creek is by means of infiltration, oxidation, and stream flow, subjected to such purification that it constitutes no sort of detriment or menace to the town of Smithfield or its inhabitants," etc.

Upon the pleadings and certain affidavits appearing in the record the plaintiffs ask "that the defendants immediately be restrained and enjoined from discharging untreated sewage into said creeks and through said creeks into the waters of Neuse River, as above set out."

The trial judge found the facts substantially as follows:

1. Smithfield is a municipal corporation, situate upon the eastern bank of Neuse River, with a population, according to the census of 1928, of 2,548. It owns and operates a water plant, established in 1916, and enlarged in 1924. The water is pumped out of Neuse River, purified by chlorination, and distributed to its citizens for the usual household purposes.

2. Raleigh is a municipal corporation, situated upon the plateau between Walnut and Crabtree creeks, in Wake County. The population, according to the last census, was 37,379, and included within the area to be affected by the decree are several suburban developments and public institutions, "and the court finds that the present total population of the area in question, which uses the water and sewerage system of the defendant corporation, is approximately 42,000."

3. In 1891 Raleigh constructed its sewerage system with one line emptying into Walnut Creek and the other in Crabtree Creek, at points approximately 33 miles distant from the town of Smithfield. Said sewage is not treated, but is emptied into said creeks in a raw state. Said sewerage system further serves State College, State Prison, Central

Hospital for the Insane, the Institution for the Blind, the State Capitol, Governor's Mansion, all State Departments, Peace Institute, St. Mary's College, and various suburban developments.

4. Evidence was offered by both sides as to the effect of sewage upon the waters of Neuse River at Smithfield, but such evidence is very unsatisfactory.

5. The stoppage of the flow of sewage into Walnut and Crabtree creeks would result in untold misery and discomfort to more than 40,000 people. The city of Raleigh is two years in default on the payment of its bonded indebtedness, amounting to $5,500,000. "Its borrowing capacity has reached its limit and application has been made to Federal agencies for a loan of $800,000 with which to construct a sewage disposal plant," etc.

6. There was no evidence that Smithfield has suffered inconvenience by reason of the defendant's violation of C. S., 7125, and there was no evidence of a single case of typhoid fever, colitis, dysentery, or any other disease caused by pathogenic bacteria. The population of Smithfield represents 6.81 per cent of the population which would be affected by the decree prayed for. "The court has drunk of its water and bathed in it, and has suffered no ill effects therefrom."

From the findings of fact made, the trial judge entered judgment in part as follows: "Upon the facts admitted and found by the court, it is now ordered and adjudged that the petition be denied, and the action is dismissed at the cost of the plaintiffs. . . . This judgment shall not be taken hereafter, or held to be an estoppel against the plaintiffs, in case another action is brought for the same cause, whenever it shall be made to appear that the defendants are in a position to comply with the statute which forms the basis of this action."

The only assignment of error is as follows: "That the judgment of his Honor upon the pleadings and upon the facts found by the court is erroneous."

From judgment rendered plaintiffs appealed.

*G. A. Martin for plaintiffs.*
*J. M. Broughton and W. H. Yarborough, Jr., for defendants.*

BROGDEN, J. Does C. S., 7125, impose upon the trial judge the mandatory duty of enjoining a municipality from discharging raw sewage into a stream from which another municipality takes its water supply?

There were no exceptions taken to the findings of fact made by the trial judge. The pertinent findings were: (a) That the discharge of raw sewage into Neuse River, in view of the facts and circumstances, had produced no injury to the plaintiff, and there were no facts tending

to show immediate menace to the inhabitants of the plaintiff municipality; (b) that the defendant is not in a financial condition to immediately install purification plants necessary to comply with the provision of the statute.

Indeed, it seems that the trial judge subjected the question to "trial by water," because the record discloses that his Honor "had drunk of the water, bathed in it, and suffered no ill effects." The ancient mode of "trial by water" was aforetime deemed efficacious in determining the guilt or innocence of witches, and by applying the practices of the ancient law the distinguished jurist has found the waters of Neuse River not guilty.

The principal cases in this jurisdiction construing C. S., 7125, are: *Durham v. Cotton Mills,* 141 N. C., 615, 54 S. E., 453; *Shelby v. Power Co.,* 155 N. C., 196, 71 S. E., 218; *Board of Health v. Commissioners,* 173 N. C., 250, 91 S. E., 1019. These cases proceed upon the theory that a violation of C. S., 7125, authorizes the exercise of the restraining power of a court of equity, irrespective of the fact that no injury has actually occurred. It is the threat or potentiality of menace rather than the accomplished fact thereof that warrants the interposition of equitable power. Notwithstanding, common sense is older than the common law, statutory law, or equity, and this saving grace of human experience must be reckoned with in determining the application of technical rules of behavior. If the trial judge had granted the prayer of the plaintiffs and had immediately restrained the city of Raleigh from using its sewerage system and plugged the entire system with the force of law, untold misery and suffering would be entailed upon a population of over 40,000 people. The statute recognizes such practical exigencies of social life, and declares that "the continued flow and discharge of such sewage may be enjoined upon application of any person." The words "may be enjoined" clearly demonstrate that surrounding facts and circumstances must be considered in entering a peremptory order of the kind sought in this action. The cases referred to all disclose that a reasonable time was accorded for complying with the statute.

Manifestly, Raleigh must comply with C. S., 7125. This statute pronounces the public policy of the State, against which, temporizing and unreasonable delay will not avail. This idea was doubtless in the mind of the trial judge because it is particularly specified in the judgment that the same "shall not be taken hereafter, or held to be an estoppel against the plaintiffs, in case another action is brought for the same cause," etc.

Affirmed.