IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-169

No. COA20-889

Filed 15 March 2022

Wake County, No. 18 CVS 9970

Pitt County, No. 18 CVS 1890

MARY SUE VAITOVAS, Plaintiff,

v.

CITY OF GREENVILLE; PITT COUNTY BOARD OF EDUCATION; PHIL BERGER, in his capacity as President Pro Tempore of the Senate; and TIM MOORE, in his capacity as Speaker of the House of Representatives, Defendants.

Appeal by plaintiff from judgment entered 25 June 2019 and order entered 30 October 2020 by Judges Richard S. Gottlieb, William H. Coward, and Imelda J. Pate in Wake County Superior Court. Heard in the Court of Appeals 8 September 2021.

*Stam Law Firm, PLLC, by R. Daniel Gibson and Paul Stam, for plaintiff-appellant.*

*Brooks, Pierce, McLendon, Humphrey & Leonard, L.L.P., by Robert J. King, III, Jill R. Wilson, and Elizabeth L. Troutman, for defendants-appellees City of Greenville and Pitt County Board of Education.*

*Attorney General Joshua H. Stein, by Solicitor General Ryan Y. Park, for defendants-appellees Phil Berger and Tim Moore.*

DIETZ, Judge.

Some cities and towns in North Carolina have automated traffic cameras that document vehicles running red lights and record the necessary information so that

the driver later can be cited for a traffic violation. But importantly, this is only in *some* cities and towns in North Carolina. The General Statutes permit these traffic cameras in Greensboro and High Point, for example, but not Winston-Salem. They are permitted in small towns across the State such as Nags Head, Pineville, and Spring Lake, but not in countless other, similar towns.

¶ 2    The North Carolina Constitution prohibits the General Assembly from enacting "local" laws "[r]elating to health, sanitation, and the abatement of nuisances." N.C. Const. art. II, § 24(1)(a). Plaintiff Mary Sue Vaitovas received a red-light camera citation from the City of Greenville, one of the cities permitted by statute to operate red-light traffic cameras. She brought a constitutional challenge under the local laws provision of our Constitution, but not against the statute authorizing Greenville to implement a red-light traffic camera program. Instead, Vaitovas challenged a separate local law, enacted years later, that permits Greenville to "enter into a contract with a contractor for the lease, lease-purchase, or purchase of" a red-light traffic camera system for the municipality.

¶ 3    Under controlling precedent from our Supreme Court, the challenged statute is not one relating to health. In *City of Asheville v. State*, the Court limited the phrase "relating to" in this portion of our Constitution to those laws with a "material" connection to health and not those with a "tangential or incidental connection." 369 N.C. 80, 102–03, 794 S.E.2d 759, 776 (2016). The challenged act, which does not shift

responsibility for the program (it is Greenville's responsibility) and does not change the health-related aspects of the program (those are governed by a separate, unchallenged statute) has, at most, an incidental connection to health. Accordingly, we affirm the three-judge panel's determination that the challenged act "providing for the funding of Greenville's red light camera program, does not relate to health."

¶ 4        The three-judge panel also determined that the underlying, unchallenged red-light traffic camera statute does not relate to health. That issue was not properly before the trial court and we decline to endorse that portion of the trial court's reasoning. Whether the underlying red-light traffic camera legislation is an unconstitutional local law relating to health is a question that must wait for another day.

## Facts and Procedural History

¶ 5        In 1997, the General Assembly enacted N.C. Gen. Stat. § 160A-300.1, a law authorizing the City of Charlotte to set up an automated red-light camera program for the enforcement of traffic laws. Over time, the General Assembly slowly added more cities and towns to the statute and it now applies "only to the Cities of Albemarle, Charlotte, Durham, Fayetteville, Greensboro, Greenville, High Point, Locust, Lumberton, Newton, Rocky Mount, and Wilmington, to the Towns of Chapel Hill, Cornelius, Huntersville, Matthews, Nags Head, Pineville, and Spring Lake, and to the municipalities in Union County." N.C. Gen. Stat. § 160A-300.1(d). The General

Assembly added the City of Greenville to the statute in 2000. 2000 N.C. Sess. Laws 37, § 1.

¶ 6        In 2016, the City of Greenville adopted a resolution stating that the city did not believe it was "financially viable" to implement a red-light traffic program under existing law and requesting legislation from the General Assembly, modeled on a similar piece of legislation for the City of Fayetteville, that would authorize the city to contract with a private party to lease or purchase the necessary camera equipment and reporting functionality.

¶ 7        City officials and proponents of the legislation within the General Assembly repeatedly referenced the importance of red-light traffic cameras to "reduce traffic accidents and save lives." But during debate in the House, responding to a legislator's observation that the bill "makes no change or difference to the legality or the ability for cities to use a system like this," the bill sponsor explained that the bill was needed for financial reasons because "the feasibility was not profitable or not—was not at zero sum game for the city itself. Now the city's expenses will be taken care of so they want to put forward with the bill."

¶ 8        The General Assembly enacted the challenged act, N.C. Session Law 2016-64. For ease of reference, we include the entire challenged act below:

> AN ACT TO MAKE CHANGES TO THE LAW GOVERNING RED LIGHT CAMERAS IN THE CITY OF GREENVILLE.

The General Assembly of North Carolina enacts:

SECTION 1.  Section 3 of S.L. 2007-341 reads as rewritten:

"SECTION 3.  Section 1 of this act applies to the Cities of Albemarle, Charlotte, Durham, Fayetteville, <u>Greenville</u>, Locust, and Rocky Mount and to the municipalities in Union County."

SECTION 2.  G.S. 160A-300.1(c), as amended by S.L. 2007-341, is amended by adding a new subdivision to read:

"<u>(4a)</u>  <u>A municipality enacting an ordinance implementing a traffic control photographic system may enter into a contract with a contractor for the lease, lease-purchase, or purchase of the system. The municipality may enter into only one contract for the lease, lease-purchase, or purchase of the system, and the duration of the contract may be for no more than 60 months. After the period specified in the contract has expired, the system shall either be the property of the municipality, or the system shall be removed and returned to the contractor.</u>"

SECTION 3.  G.S. 160A-300.1(c)(2), as amended by S.L. 2007-341, and by Section 1 of this act, reads as rewritten:

"(2)  A violation detected by a traffic control photographic system shall be deemed a noncriminal violation for which a civil penalty of ~~seventy-five dollars ($75.00)~~one hundred dollars ($100.00) shall be assessed, and for which no points authorized by G.S. 20-16(c) shall be assigned to the owner or driver of the vehicle nor insurance points as authorized by G.S. 58-36-65."

SECTION 4.  The City of Greenville and the Pitt County Board of Education may enter into an interlocal agreement

> necessary and proper to effectuate the purpose and intent
> of G.S. 160A-300.1 and this act. Any agreement entered
> into pursuant to this section may include provisions on
> cost-sharing and reimbursement that the Pitt County
> Board of Education and the City of Greenville freely and
> voluntarily agree to for the purpose of effectuating the
> provisions of G.S. 160A-300.1 and this act.
>
> SECTION 5. This act applies only to the City of Greenville
> and the Pitt County Board of Education.
>
> SECTION 6. Section 3 of this act becomes effective October
> 1, 2016, and applies to violations committed on or after that
> date. The remainder of this act becomes effective July 1,
> 2016.

2016 N.C. Sess. Laws 64, §§ 1–6.

In February 2018, Plaintiff Mary Sue Vaitovas received a notice of violation for allegedly running a red light. On 17 April 2018, Vaitovas appealed the imposition of the civil penalty at an administrative hearing and lost. She later filed this action in the trial court, alleging that Session Law 2016-64 violates the North Carolina Constitution's limitation on local laws relating to health. Vaitovas sued the State (through official capacity suits against officials in the General Assembly), the City of Greenville, and the Pitt County Board of Education.

The case eventually was assigned to a three-judge panel of superior court judges. Before that assignment, the State moved to dismiss and the trial court declined to rule on the motion, instead indicating that it should be resolved by the three-judge panel. Later, on cross-motions for summary judgment from Vaitovas and

the municipal defendants, the trial court granted summary judgment in favor of the City of Greenville and the Pitt County Board of Education in a reasoned order discussing the background and constitutionality of the challenged statute. Vaitovas appealed.

¶ 11     We dismissed the appeal because the three-judge panel had not yet resolved the claims against the State—something that now appears to have been an oversight by all involved. *Vaitovas v. City of Greenville*, 271 N.C. App. 578, 844 S.E.2d 317 (2020). On remand, the trial court dismissed the claims against the State in a one-paragraph order incorporating its reasoning from the summary judgment ruling in favor of the municipal defendants. Vaitovas again appealed.

**Analysis**

¶ 12     We review a trial court's ruling on state constitutional question *de novo*. *Cooper v. Berger*, 370 N.C. 392, 413, 809 S.E.2d 98, 110–11 (2018). "It is well settled in this State that the courts have the power, and it is their duty in proper cases, to declare an act of the General Assembly unconstitutional—but it must be plainly and clearly the case." *Glenn v. Bd. of Educ. of Mitchell County*, 210 N.C. 525, 529, 187 S.E. 781, 784 (1936). "In performing our task, we begin with a presumption that the laws duly enacted by the General Assembly are valid." *Hart v. State*, 368 N.C. 122, 126, 774 S.E.2d 281, 284 (2015). Accordingly, "a law will be declared invalid only if its unconstitutionality is demonstrated beyond reasonable doubt." *Id.*

¶ 13 It also is well settled that the North Carolina Constitution confers to our General Assembly plenary power "to pass all needful laws, except when barred by constitutional restrictions." *Town of Shelby v. Cleveland Mill & Power Co.*, 155 N.C. 196, 200, 71 S.E. 218, 219–20 (1911). Vaitovas argues that Session Law 2016-64 is unconstitutional because it is barred by Article II, Section 24(1)(a) of the North Carolina Constitution, which prevents the General Assembly from passing any local acts related to health:

> (1)     Prohibited Subjects. The General Assembly shall not enact any local, private, or special act or resolution:
>
> > (a) Relating   to   health,   sanitation,   and   the abatement of nuisances
>
> . . .
>
> (3)     Prohibited acts void. Any local, private, or special act or resolution enacted in violation of the provisions of this Section shall be void.

N.C. Const. art II, § 24(1)(a), (3).

¶ 14 In *City of Asheville v. State*, our Supreme Court held that, to determine whether a law is one "relating to" health, sanitation, or the abatement of nuisances, a court must examine whether "in light of its stated purpose and practical effect, the legislation has a material, but not exclusive or predominant, connection to issues involving health, sanitation, and the abatement of nuisances." 369 N.C. 80, 103, 794 S.E.2d 759, 776 (2016). When there is merely the "existence of a tangential or

incidental connection between the challenged legislation and health and sanitation," the law is not one relating to health or sanitation. *Id.* at 102, 794 S.E.2d at 776.

¶ 15        So, for example, "a local act that shifts responsibility for enforcing health and safety regulations from one entity to another clearly relates to health and sanitation." *Id.* at 104, 794 S.E.2d at 777. This is so, our Supreme Court explained, because a law changing the government entity or "officers to whom is given the duty of administering the health laws" has a material connection to how that health law will be administered. *Id.* at 105, 794 S.E.2d at 777.

¶ 16        Vaitovas cites various evidence in the record as proof of the purpose of the challenged statute. For example, she cites public statements by city officials, affidavits from the city's police chief, and statements on the floor of the State House by proponents of the legislation. But what individual legislators think about the purpose of a statute is rarely (if ever) helpful in interpreting the intent of the General Assembly as a whole. And what local officials think about a statute is even less so. That is why our Supreme Court emphasized that while the General Assembly's "stated purpose"—a phrase implying a statement from the legislature as a whole— might be relevant to the analysis, it is the law's *effect* that is "pertinent to, and perhaps determinative of, the required constitutional inquiry." *Id.* at 102, 794 S.E.2d at 775.

¶ 17        Here, the effect of the challenged act is quite different from those our Supreme

Court determined are relating to health. The challenged act concerns the mechanics of how Greenville can hire and pay a private firm to assist with its red-light camera program. It does not change *who* is responsible for administering the program—it is still the City of Greenville's responsibility. And it does not change *how* the red-light traffic program operates—that is governed by a separate, unchallenged statute.

¶ 18        Were we to hold that this local act relates to health, our ruling would conflict with the Supreme Court's holding in *City of Asheville*. There, the Court rejected the argument that "relating to" means "[c]onnected in some way" or "having a relationship to or with something else." *Id.* The Court found that interpretation too broad. Instead, the Court limited the term to those local acts having a "material" connection to health but not those with a "tangential or incidental connection." *Id.* at 102–03, 794 S.E.2d at 775–76.

¶ 19        The challenged act falls squarely into the latter category, as a law with only an incidental effect on health. Whatever impact red-light traffic cameras have on the health of those in Greenville, that effect is governed by a separate statute and, both before and after the challenged act, Greenville remains solely responsible for administering all health-related aspects of a red-light traffic camera program as the General Assembly has instructed. We therefore affirm the three-judge panel's determination that the challenged act, "as a means of providing for the funding of Greenville's red light camera program, does not relate to health."

The three-judge panel also determined that "even if this Court needs to address the more fundamental question of whether red light cameras themselves relate to health, this Court determines that they do not." The trial court did not need to address that question. Vaitovas, for whatever reason, did not challenge the underlying statute authorizing red light cameras in some parts of North Carolina but not other, similarly situated areas. *See* N.C. Gen. Stat. § 160A-300.1. North Carolina courts do not pass on the constitutionality of state statutes not challenged by the litigants, and for good reason. *Poore v. Poore*, 201 N.C. 791, 792, 161 S.E. 532, 533 (1931). Accordingly, we leave for another day the question of whether the General Assembly's red-light traffic camera legislation is an unconstitutional local law relating to health.

**Conclusion**

For the reasons stated above, the judgment of the three-judge panel is affirmed.

AFFIRMED.

Judges GORE and GRIFFIN concur.