TREANTS ENTERPRISES, INC. v. ONSLOW COUNTY, THE SHERIFF OF
    ONSLOW COUNTY IN HIS OFFICIAL CAPACITY; AND THE ONSLOW COUNTY
    TAX COLLECTOR IN HIS OFFICIAL CAPACITY

No. 746A86

(Filed 7 October 1987)

**Constitutional Law § 14— movie mates ordinance—regulation of all companionship
businesses—overbroad**

> An Onslow County ordinance which aimed at "movie mates" but which
> regulated all companionship businesses was not rationally related to a substan-
> tial government purpose in that it was overbroad and was in violation of Art.
> I, §§ 1 and 29 of the North Carolina Constitution.

> Justice WEBB did not participate in the consideration or decision of this
> case.

APPEAL by defendants pursuant to N.C.G.S. § 7A-30(1) from
the decision of the Court of Appeals, 83 N.C. App. 345, 350 S.E.
2d 365 (1986), affirming order of *Lewis (John B.)*, *J.*, at the 28 Oc-
tober 1985 session of Superior Court, ONSLOW County, per-
manently enjoining defendants from enforcing an ordinance of
Onslow County. Heard in the Supreme Court 9 September 1987.

*Jeffrey S. Miller for plaintiff-appellee.*

*Roger A. Moore for defendant-appellants.*

MARTIN, Justice.

Plaintiff successfully sought to enjoin the enforcement of an
Onslow County ordinance that imposes licensing requirements on
businesses purveying male or female "companionship." The su-
perior court's order was affirmed by the Court of Appeals on con-
stitutional grounds. Today we affirm the decision of the Court of
Appeals.

On 19 June 1985 Onslow County enacted an ordinance en-
titled, "AN ORDINANCE REGULATING BUSINESSES PROVIDING
MALE OR FEMALE COMPANIONSHIP" (amended 1 July 1985). Like
the massage parlor ordinance that preceded it, this ordinance was
intended to prevent the use of ostensibly legitimate businesses as
blinds for pandering and prostitution. At the time the ordinance
was enacted, county officials were particularly concerned about
establishments known locally as "movie mates," which provide

female companions for their male patrons while viewing movies in private rooms. But, Onslow County officials found themselves in a position which can be likened to that of ancient Hercules in his contest with the serpent Hydra. Based on their experience with massage parlors, they anticipated that an ordinance directed specifically at movie-mates establishments would merely cause operators to reconstitute their businesses in some further "adult entertainment" guise. To effectively combat prostitution, county officials sought an ordinance drawn with sufficient breadth to foil such ingenuity. The resulting ordinance regulated all "companionship businesses." A "male or female companionship business" is defined by the ordinance as one that is engaged in "providing or selling male or female companionship in exchange for money or other valuable consideration."

The provisions of the ordinance include the following: (1) all companionship businesses are to be licensed; (2) all such businesses are to be conducted on licensed premises; (3) persons convicted of a felony or crime involving prostitution within the preceding five years will be denied a license; likewise, persons subsequently convicted will suffer license revocation; (4) licensees must register the names and addresses of their employees with the sheriff; knowing employment of prostitutes is grounds for revocation of license; (5) persons under eighteen years old may not patronize companionship businesses; (6) the name, birthdate, and physical characteristics of patrons must be recorded and filed with the sheriff's department.

The ordinance was to become effective in August of 1985. However, the statute has never been enforced pending determination of its validity. In June of that year, the plaintiff, Treants Enterprises, Inc., which operates three movie-mates businesses in Onslow County, filed a complaint challenging the constitutionality of the ordinance. In October 1985 the superior court permanently enjoined defendants from enforcing the ordinance. In an opinion filed in November 1986 the Court of Appeals affirmed the order of the superior court, based upon state constitutional principles, holding that the ordinance violated article I, sections 1 and 19 of the North Carolina Constitution. Defendants' appeal is before this Court pursuant to N.C.G.S. § 7A-30(1), which provides an appeal as of right from any decision of the Court of Appeals which involves a substantial question arising under the Constitution of the

United States or the North Carolina Constitution. Defendants base their appeal only on state constitutional grounds. No federal constitutional questions are at issue. Therefore, our decision on this appeal is based solely upon adequate and independent state grounds. *Michigan v. Long*, 463 U.S. 1032, 77 L.Ed. 2d 1201 (1983).

Evidence presented by the defendants tended to show that movie-mates establishments have harbored prostitution, crimes against nature, and the use of controlled substances. Further, the efforts of county law enforcement officials to halt these practices have been frustrated by movie-mates operators. They have taught their employees methods of detecting undercover officers and thus thwarted efforts to police these establishments. Evidence presented by defendant Onslow County also showed that its prior effort to combat organized prostitution through the massage parlor ordinance had been effective, if only to force the chameleon of adult entertainment to appear in novel hues. Since the enactment of the massage parlor ordinance in 1978, no massage parlors have operated in Onslow County.

The defendants are correct in asserting that (1) the state has the power to do whatever may be necessary to protect public health, safety, morals, and the general welfare, *A-S-P Associates v. City of Raleigh*, 298 N.C. 207, 258 S.E. 2d 444 (1979); (2) the police power may be delegated by the state to its municipalities when the legislature deems it necessary to do so, *id.*; and (3) the state has indeed delegated to the counties the power to enact ordinances to regulate such businesses as movie mates in the public interest, N.C.G.S. §§ 153A-134, -135 (1983). The question before this Court, however, is not whether Onslow County has the power to combat prostitution and its associated evils, but whether the Onslow County companionship ordinance as written violates sections 1 and 19 of article I of the North Carolina Constitution.

Article I, section 1 places among the inalienable rights of the people, "life, liberty, the enjoyment of the fruits of their own labor, and the pursuit of happiness." Section 19 of the same article provides that no person shall be "deprived of his life, liberty, or property, but by the law of the land." A single standard determines whether the Onslow County ordinance passes constitutional muster imposed by both section 1 and the "law of the land" clause of section 19: the ordinance must be rationally related to a sub-

stantial government purpose. This is the requirement article I, section 1 imposes on government regulation of trades and business in the public interest. *Roller v. Allen*, 245 N.C. 516, 96 S.E. 2d 851 (1957); *State v. Balance*, 229 N.C. 764, 251 S.E. 2d 731 (1949); *State v. Harris*, 216 N.C. 746, 6 S.E. 2d 854 (1940). The "law of the land" clause of section 19 imposes the same requirement. *In re Hospital*, 282 N.C. 542, 193 S.E. 2d 729 (1973).

We hold that the ordinance fails the above-stated constitutional test. Defendants readily admit that the ordinance is broad but deny it is overbroad. Their goal was an ordinance broad enough to prevent repetition of their experience with the massage parlor ordinance. They sought to regulate under the companionship ordinance all current and future adult-entertainment businesses that might bring prostitution into their county. Unfortunately, they hit upon a term and a category of businesses — "companionship" — which encompasses an indefinitely large number of salutary enterprises, along with the meretricious adult-entertainment establishments at which county officials took aim. According to Webster's Third New International Dictionary, a "companion" is anyone who "accompanies or is in the company of another." This term is broad enough to encompass both the salubrious and the salacious and indeed in its ordinary meaning more commonly connotes the former. The companionship ordinance, therefore, on its face purports to regulate nursing homes and companions for the elderly along with movie mates, "private room" bars, and "dial-an-escort" services.

Defendants insist that the Los Angeles "escort bureau" ordinance upheld in *People v. Katrinak*, 136 Cal. App. 3d 145, 185 Cal. Rptr. 869 (1982), provides a constitutionally valid model for what Onslow County tried to do with its companionship ordinance. Defendants argue that the ordinance there upheld was just as broad as their own ordinance, defining, as it did, "escort" as anyone who "accompanies" or "consorts" with another in public or private for a fee. We disagree. The word "escort" used in the California ordinance has a much narrower field of application than the term "companion" in the Onslow County ordinance. While "escort" connotes a companion for purposes of socializing and amusement, the Onslow County ordinance uses "companion" in a wholly unrestricted manner which embraces anyone who may for compensation accompany another for purposes of providing him or

her with aid of any kind, for example, a companion to someone infirm. The terms "escort bureau" and "escort service" are often regarded as euphemisms for prostitution, the very type of business at which the aptly named California ordinance is directed.

We hold that by reason of its overbreadth, the ordinance is not rationally related to a substantial government purpose and violates our state constitution.

Having disposed of the appeal on this issue, we do not find it necessary to discuss the other issues presented.

The decision of the Court of Appeals is

Affirmed.

Justice WEBB did not participate in the consideration or decision of this case.