IN RE: GEORGE A. GUESS, M.D., RESPONDENT

No. 431PA89

(Filed 26 July 1990)

1. **Physicians, Surgeons, and Allied Professions § 6 (NCI3d) — medical license — revocation by Board of Medical Examiners — statute as valid exercise of police power**

    The statute permitting the Board of Medical Examiners to suspend or revoke a physician's license to practice medicine for "unprofessional conduct" based on a deviation from "the standards of acceptable and prevailing medical practice," N.C.G.S. § 90-14(a)(6), is a valid exercise of the police power and does not require a finding that the deviation must pose an actual threat of harm to the public.

    **Am Jur 2d, Physicians, Surgeons, and Other Healers §§ 76-78.**

2. **Constitutional Law § 7.1 (NCI3d); Physicians, Surgeons, and Allied Professions § 6 (NCI3d) — medical license revocation — deviation from acceptable and prevailing standards — no unlawful delegation of legislative powers**

    The statute permitting the Board of Medical Examiners to suspend or revoke a physician's license for unprofessional conduct based on a deviation from the "standards of acceptable and prevailing medical practice," N.C.G.S. § 90-14(a)(6), is sufficiently specific to provide the Board with the adequate guiding standards necessary to support the legislature's delegation of authority to the Board.

    **Am Jur 2d, Physicians, Surgeons, and Other Healers §§ 76-78.**

3. **Physicians, Surgeons, and Allied Professions § 6.2 (NCI3d) — practice of homeopathy — not acceptable and prevailing medical practice — revocation of medical license — sufficiency of evidence**

    The evidence supported a decision by the Board of Medical Examiners to revoke the medical license of a physician who practiced homeopathy on the ground that the practice of homeopathy does not conform to "the standards of acceptable and prevailing medical practice" in North Carolina and thus constitutes unprofessional conduct prohibited by N.C.G.S. § 90-14(a)(6).

IN RE GUESS

[327 N.C. 46 (1990)]

Am Jur 2d, Physicians, Surgeons, and Other Healers § 213.

4. **Physicians, Surgeons, and Allied Professions § 6.2 (NCI3d) — practice of homeopathy — applicable and prevailing medical standards — efficacy and use of homeopathy outside N.C. irrelevant**

Evidence concerning the efficacy of homeopathy and its use outside North Carolina was not relevant to the issue before the Board of Medical Examiners as to whether the practice of homeopathy meets "acceptable and prevailing standards of medical practice" in North Carolina.

Am Jur 2d, Physicians, Surgeons, and Other Healers § 213.

5. **Physicians, Surgeons, and Allied Professions § 6 (NCI3d) — acceptable and prevailing medical standards — statute not unconstitutionally vague**

The statute permitting the revocation of a physician's medical license for unprofessional conduct based on acts which do not conform to "the standards of acceptable and prevailing medical practice" in North Carolina, N.C.G.S. § 90-14(a)(6), is not unconstitutionally vague.

Am Jur 2d, Physicians, Surgeons, and Other Healers § 77.

6. **Physicians, Surgeons, and Allied Professions § 6 (NCI3d) — practice of homeopathy — revocation of medical license — no invasion of privacy rights**

A decision by the Board of Medical Examiners to revoke a physician's license because of his practice of homeopathy did not unconstitutionally invade his privacy rights or the privacy rights of his patients. Furthermore, the physician had no standing to raise his patients' privacy interests in this regard.

Am Jur 2d, Physicians, Surgeons, and Other Healers § 116.

7. **Physicians, Surgeons, and Allied Professions § 6 (NCI3d) — practice of homeopathy — revocation of medical license — no exercise of monopoly**

The Board of Medical Examiners did not exercise unbridled and unconstitutional monopoly power by denying a physician the opportunity to practice homeopathy.

**IN RE GUESS**

[327 N.C. 46 (1990)]

**Am Jur 2d, Physicians, Surgeons, and Other Healers § 116.**

Justice FRYE dissenting.

ON discretionary review pursuant to N.C.G.S. § 7A-31 of the decision of the Court of Appeals, 95 N.C. App. 435, 382 S.E.2d 459 (1989), affirming an order entered by *Farmer, J.*, on 20 May 1987 in Superior Court, WAKE County. Heard in the Supreme Court on 11 April 1990.

*Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, by Michael E. Weddington and Susan M. Parker, for the complainant appellant Board of Medical Examiners of the State of North Carolina.*

*Manning, Fulton & Skinner, by Charles E. Nichols, Jr., for the respondent appellee George A. Guess, M.D.*

MITCHELL, Justice.

At issue in this case is whether the Court of Appeals erred in affirming a Superior Court order which reversed and vacated a decision of the Board of Medical Examiners of the State of North Carolina conditionally revoking the respondent appellee's medical license. We conclude that the Court of Appeals did err in this regard, and we reverse its holding.

The facts of this case are essentially uncontested. The record evidence tends to show that Dr. George Albert Guess is a licensed physician practicing family medicine in Asheville. In his practice, Guess regularly administers homeopathic medical treatments to his patients. Homeopathy has been defined as:

A system of therapy developed by Samuel Hahnermann on the theory that large doses of a certain drug given to a healthy person will produce certain conditions which, when occurring spontaneously as symptoms of a disease, are relieved by the same drug in small doses. This [is] . . . a sort of "fighting fire with fire" therapy.

Stedman's Medical Dictionary 654 (24th ed. 1982); *see* Schmidt's Attorneys' Dictionary of Medicine H-110 (1962). Homeopathy thus differs from what is referred to as the conventional or allopathic system of medical treatment. Allopathy "employ[s] remedies which affect the body in a way *opposite* from the effect of the disease

treated." Schmidt's Attorneys' Dictionary of Medicine A-147 (emphasis added); see Stedman's Medical Dictionary 44.

The Board of Medical Examiners of the State of North Carolina (herein Board) is a legislatively created body established "to properly regulate the practice of medicine and surgery." N.C.G.S. § 90-2 (1985). On 25 June 1985, the Board charged Dr. Guess with unprofessional conduct, pursuant to N.C.G.S. § 90-14(a)(6), specifically based upon his practice of homeopathy. In a subsequent Bill of Particulars, the Board alleged that in his practice of medicine, Guess utilized "so-called 'homeopathic medicines' prepared from substances including, but not limited to, moss, the night shade plant and various other animal, vegetable and mineral substances." The Board further alleged that the use of homeopathic medicines "departs from and does not conform to the standards of acceptable and prevailing medical practice in the State of North Carolina." See N.C.G.S. § 90-14(a)(6) (1985).

Following notice, a hearing was held by the Board on the charge against Dr. Guess. The hearing evidence chiefly consisted of testimony by a number of physicians. Several physicians licensed to practice in North Carolina testified that homeopathy was not an acceptable and prevailing system of medical practice in North Carolina. In fact, there was evidence indicating that Guess is the only homeopath openly practicing in the State. Guess presented evidence that homeopathy is a recognized system of practice in at least three other states and many foreign countries. There was no evidence that Guess' homeopathic treatment had ever harmed a patient, and there was anecdotal evidence that Guess' homeopathic remedies had provided relief to several patients who were apparently unable to obtain relief through allopathic medicine.

Following its hearing, the Board revoked Dr. Guess' license to practice medicine in North Carolina, based upon findings and conclusions that Guess' practice of homeopathy "departs from and does not conform to the standards of acceptable and prevailing medical practice in this State," thus constituting unprofessional conduct as defined and prohibited by N.C.G.S. § 90-14(a)(6). The Board, however, stayed the revocation of Guess' license for so long as he refrained from practicing homeopathy.

Guess appealed the Board's decision to the Superior Court, Wake County, pursuant to N.C.G.S. § 90-14.8. On 17 January 1986, the Superior Court stayed the Board's decision pending judicial

review. After review, the Superior Court entered an order on 20 May 1987 which reversed and vacated the Board's decision. The Superior Court found and concluded that Guess' substantial rights had been violated because the Board's findings, conclusions and decision were "not supported by competent, material and substantial evidence and [were] arbitrary and capricious."

The Board appealed the Superior Court's order to the Court of Appeals, which dismissed the appeal for lack of jurisdiction. *In re Guess*, 89 N.C. App. 711, 367 S.E.2d 11 (1988). This Court reversed that decision and remanded this case to the Court of Appeals for its determination of the issues raised by the appeal. *In re Guess*, 324 N.C. 105, 376 S.E.2d 8 (1989). On remand, the Court of Appeals rejected the Superior Court's reasoning to the effect that the Board's findings, conclusions and decision were not supported by competent evidence. *In re Guess*, 95 N.C. App. 435, 437, 382 S.E.2d 459, 461 (1989). The Court of Appeals, nonetheless, affirmed the Superior Court's order reversing the Board's decision,

> because the Board neither charged nor found that Dr. Guess' departures from approved and prevailing medical practice either endangered or harmed his patients or the public, and in our opinion the revocation of a physician's license to practice his profession in this state must be based upon conduct that is detrimental to the public; it cannot be based upon conduct that is merely different from that of other practitioners.

*Id.* at 437, 382 S.E.2d at 461. We granted the Board's Petition for Discretionary Review, and now reverse the Court of Appeals.

I.

The statute central to the resolution of this case provides in relevant part:

> § 90-14. Revocation, suspension, annulment or denial of license.
>
> (a) The Board shall have the power to deny, annul, suspend, or revoke a license . . . issued by the Board to any person who has been found by the Board to have committed any of the following acts or conduct, or for any of the following reasons:
>
>      . . . .
>
>      (6) Unprofessional conduct, including, but not limited to, *any departure* from, or the failure to conform to, the *standards*

*of acceptable and prevailing medical practice,* or the ethics of the medical profession, *irrespective of whether or not a patient is injured thereby . . . .*

N.C.G.S. § 90-14 (1985) (emphases added). The Court of Appeals concluded that in exercising the police power, the legislature may properly act only to protect the public from harm. *In re Guess,* 95 N.C. App. at 437-38, 382 S.E.2d at 461. Therefore, the Court of Appeals reasoned that, in order to be a valid exercise of the police power, the statute must be construed as giving the Board authority to prohibit or punish the action of a physician only when it can be shown that *the particular action in question* poses a danger of harm to the patient or the public. *Id.* Specifically, the Court of Appeals held that:

Before a physician's license to practice his profession in this state can be lawfully revoked under G.S. 90-14(a)(6) for practices contrary to acceptable and prevailing medical practice that *it must also appear that the deviation complained of posed some threat of harm to either the physician's patients or the public.*

*Id.* at 438, 382 S.E.2d at 462 (emphasis added).

The Board argues, and we agree, that the Court of Appeals erred in construing the statute to add a requirement that each particular practice prohibited by the statute must pose an actual threat of harm. Our analysis begins with a basic constitutional principle: the General Assembly, in exercising the state's police power, may legislate to protect the public health, safety and general welfare. *See, e.g., Treants Enterprises, Inc. v. Onslow County,* 320 N.C. 776, 360 S.E.2d 783 (1987); *Martin v. Housing Corp.,* 277 N.C. 29, 175 S.E.2d 665 (1970); *Shelby v. Power Co.,* 155 N.C. 196, 71 S.E. 218 (1911). When a statute is challenged as being beyond the scope of the police power, the statute will be upheld unless it has no rational relationship to such a legitimate public purpose. *See, e.g., In re Hospital,* 282 N.C. 542, 193 S.E.2d 729 (1973); *Surplus Stores, Inc. v. Hunter,* 257 N.C. 206, 125 S.E.2d 764 (1962); *Skinner v. Thomas,* 171 N.C. 98, 87 S.E. 976 (1916).

Turning to the subject of this case, regulation of the medical profession is plainly related to the legitimate public purpose of protecting the public health and safety. *See Board of Medical Examiners v. Gardner,* 201 N.C. 123, 127, 159 S.E. 8, 10 (1931). State

regulation of the medical profession has long been recognized as a legitimate exercise of the police power. As the Supreme Court of the United States has pointed out:

> The power of the State to provide for the general welfare of its people authorizes it to prescribe all such regulations as in its judgment will secure *or tend to secure* them against the consequences of ignorance and incapacity as well as of deception and fraud. As one means to this end it has been the practice of different States, from time immemorial, to exact in many pursuits a certain degree of skill and learning upon which the community may confidently rely . . . . The nature and extent of the qualifications required must depend primarily upon the judgments of the States as to their necessity. . . .

> Few professions require more careful preparation by one who seeks to enter it than that of medicine. It has to deal with all those subtle and mysterious influences upon which health and life depend . . . . The physician must be able to detect readily the presence of disease, and prescribe appropriate remedies for its removal. Everyone may have occasion to consult him, but comparatively few can judge of the qualifications of learning and skill which he possesses. Reliance must be placed upon the assurance given by his license, issued by an authority competent to judge in that respect, that he possesses the requisite qualifications. . . . The same reasons which control in imposing conditions, upon compliance with which the physician is allowed to practice in the first instance, may call for further conditions as new modes of treating disease are discovered, or a more thorough acquaintance is obtained of the remedial properties of vegetable and mineral substances, or a more accurate knowledge is acquired of the human system and of the agencies by which it is affected.

*Dent v. West Virginia*, 129 U.S. 114, 122-23, 32 L. Ed. 623, 626 (1889) (emphasis added); *see also, e.g., Barsky v. Board of Regents*, 347 U.S. 442, 449, 98 L. Ed. 829, 838 (1954) ("It is elemental that a state has broad power to establish and enforce standards of conduct within its borders relative to the health of everyone there.").

[1] The provision of the statute in question here is reasonably related to the public health. We conclude that the legislature, in enacting N.C.G.S. § 90-14(a)(6), reasonably believed that a general risk of endangering the public is *inherent* in *any* practices which

fail to conform to the standards of "acceptable and prevailing" medical practice in North Carolina. We further conclude that the legislative intent was to prohibit any practice departing from acceptable and prevailing medical standards without regard to whether the particular practice itself could be shown to endanger the public. Our conclusion is buttressed by the plain language of N.C.G.S. § 90-14(a)(6), which allows the Board to act against *any* departure from acceptable medical practice "irrespective of whether or not a patient is injured thereby." By authorizing the Board to prevent or punish *any* medical practice departing from acceptable and prevailing standards, irrespective of whether a patient is injured thereby, the statute works as a regulation which "tend[s] to secure" the public generally "against the consequences of ignorance and incapacity as well as of deception and fraud," even though it may not immediately have that direct effect in a particular case. *See Dent v. West Virginia*, 129 U.S. at 122, 32 L. Ed. at 626. Therefore, the statute is a valid exercise of the police power.

[2] We next address a related question, whether the statute, N.C.G.S. § 90-14(a)(6), properly delegates authority to the Board. We have previously recognized that the legislature may delegate certain authority, such as adjudicative and rule-making functions, to administrative bodies. *See Adams v. Dept. of N.E.R. and Everett v. Dept. of N.E.R.*, 295 N.C. 683, 249 S.E.2d 402 (1978); *Board of Medical Examiners v. Gardner*, 201 N.C. 123, 159 S.E. 8. However, the legislature may not give unfettered discretion to the administrative body, but must instead provide "adequate guiding standards to govern the exercise of the delegated powers." *Adams v. Dept. of N.E.R. and Everett v. Dept. of N.E.R.*, 295 N.C. at 697, 249 S.E.2d at 410 (citing cases). Regarding this level of guidance which the legislature must provide to administrative bodies, we have held that:

> When there is an obvious need for expertise in the achievement of legislative goals the General Assembly is not required to lay down a detailed agenda covering every conceivable problem which might arise in the implementation of the legislation. It is enough if general policies and standards have been articulated which are sufficient to provide direction to an administrative body possessing the expertise to adapt the legislative goals to varying circumstances.

*Id.* at 698, 249 S.E.2d at 411.

Certain aspects of regulating the medical profession plainly require expertise beyond that of a layman. Our legislature recognized that need for expertise when it created a Board of Medical Examiners composed of seven licensed physicians and one additional member. N.C.G.S. § 90-2 (1985). Examining the language of N.C.G.S. § 90-14(a)(6), we conclude that the legislature clearly wished to protect the public from "unprofessional conduct" by physicians, and gave as an example of such conduct that which does not conform to the "standards of acceptable and prevailing medical practice." The statutory phrase "standards of acceptable and prevailing medical practice" is sufficiently specific to provide the Board—comprised overwhelmingly of expert physicians—with the "adequate guiding standards" necessary to support the legislature's delegation of authority.

The statute in question is a valid regulation which generally tends to secure the public health, safety, and general welfare, and the legislature has permissibly delegated certain regulatory functions connected with that valid exercise of the police power to the Board. There is no requirement, however, that every action taken by the Board specifically identify or address a particular injury or danger to any individual or to the public. It is enough that the statute is a valid exercise of the police power for the public health and general welfare, so long as the Board's action is in compliance with the statute. The Court of Appeals thus erred in requiring a showing of potential harm from the particular practices engaged in by Dr. Guess as a prerequisite to Board action, and for that reason the Court of Appeals' decision is reversed.

II.

[3] Having determined that N.C.G.S. § 90-14(a)(6) does not require that an unacceptable practice by a physician pose a particular threat of public harm before the Board may take action against that physician, we next consider whether the Board's action in this case was otherwise within its statutory authority. We first must decide whether the Board's decision in this case was supported by "competent, material, and substantial evidence." N.C.G.S. § 90-14.10 (1985). Judicial review of a decision by the Board of Medical Examiners is made according to what is frequently referred to as the "any competent evidence" standard. See In re Rodgers, 297 N.C. 48, 64 n.4, 253 S.E.2d 912, 922 n.4 (1979). The Superior Court found that the Board's decision was not supported by "competent, material

and substantial" evidence. On this issue, however, we agree with the Court of Appeals:

> The Superior Court's findings and conclusions as to the Board's findings of fact have no basis, as the Board's principal findings of fact are not only supported by competent evidence, they are essentially undisputed. Dr. Guess himself testified that he frequently used homeopathic medicines in treating patients, several qualified North Carolina physicians testified that such use is contrary to the "standards of acceptable and prevailing medical practice" in this state, and no doctor testified otherwise; indeed, so far as the record indicates Dr. Guess is the only physician in North Carolina that administers homeopathic medicines to patients.

*In re Guess*, 95 N.C. App. 435, 437, 382 S.E.2d 459, 461 (1989).

[4] Findings by the Board of Medical Examiners, if supported by competent evidence, may not be disturbed by a reviewing court. Further, "[j]udicial review of a revocation of license by order of the Board does not authorize the reviewing court to substitute its discretion for that of the Board." *In re Wilkins*, 294 N.C. 528, 545, 242 S.E.2d 829, 839 (1978) (citations omitted), *criticized on other grounds by In re Guess*, 324 N.C. 105, 376 S.E.2d 8 (1989). Dr. Guess argues that the Board must show a specific risk of harm resulting from his homeopathic practices before it may interfere with them and that, since no such risk was shown, the Board's decision could not be based upon competent evidence. As we have already rejected his underlying premise, his argument here is likewise rejected. The Board's findings leading to its decision were based upon competent, material, and substantial evidence regarding what constitutes "acceptable and prevailing" standards of medical practice in North Carolina. No more was required. Guess' evidence concerning the efficacy of homeopathy and its use outside North Carolina simply was not relevant to the issue before the Board.

Dr. Guess also contends that the Board's decision was arbitrary and capricious and, therefore, must be reversed under N.C.G.S. § 90-14.10. He argues that the Board's arbitrariness is revealed in its "selective" application of the statute against him. He seems to contend that if the Board is to take valid action against him, it must also investigate and sanction every physician who is the "first" to utilize any "new" or "rediscovered" medical procedure. We disagree. The Board properly adhered to its statutory notice

and hearing requirements, and its decision was amply supported by uncontroverted competent, material and substantial evidence. We detect no evidence of arbitrariness or capriciousness.

Dr. Guess strenuously argues that many countries and at least three states recognize the legitimacy of homeopathy. While some physicians may value the homeopathic system of practice, it seems that others consider homeopathy an outmoded and ineffective system of practice. This conflict, however interesting, simply is irrelevant here in light of the uncontroverted evidence and the Board's findings and conclusion that homeopathy is not currently an "acceptable and prevailing" system of medical practice in North Carolina.

While questions as to the efficacy of homeopathy and whether its practice should be allowed in North Carolina may be open to valid debate among members of the medical profession, the courts are not the proper forum for that debate. The legislature may one day choose to recognize the homeopathic system of treatment, or homeopathy may evolve by proper experimentation and research to the point of being recognized by the medical profession as an acceptable and prevailing form of medical practice in our state; such choices, however, are not for the courts to make.

We stress that we do not intend for our opinion in this case to retard the ongoing research and development of the healing arts in any way. The Board argues, and we agree within our admittedly limited scope of medical knowledge, that preventing the practice of homeopathy will not restrict the development and acceptance of new and beneficial medical practices. Instead, the development and acceptance of such new practices simply must be achieved by "acceptable and prevailing" methods of medical research, experimentation, testing, and approval by the appropriate regulatory or professional bodies.

III.

[5] Dr. Guess also argues that N.C.G.S. § 90-14(a)(6) is unconstitutionally vague, because a reasonably intelligent doctor will not know whether he is engaging in unprofessional conduct each time he tries a new or different medical practice not widely used in North Carolina. See In re Wilkins, 294 N.C. 528, 548, 242 S.E.2d 829, 841 (1978), criticized on other grounds by In re Guess, 324 N.C. 105, 376 S.E.2d 8 (1989). We have previously held that the predecessor statute to the current N.C.G.S. § 90-14 was neither

vague nor overbroad. *Id.* at 546-49, 242 S.E.2d at 839-41. For reasons similar to those expressed in *Wilkins*, we conclude that any reasonably intelligent licensed physician will know when he is engaging in a practice which does not conform to "the standards of acceptable and prevailing medical practice" in North Carolina. Our conclusion is buttressed by the hearing testimony before the Board, where several doctors testified without hesitation that the practice of homeopathy does not conform to the standards of acceptable and prevailing medical practice in North Carolina.

## IV.

[6] Dr. Guess next contends that the Board's decision unconstitutionally invades his and his patients' privacy rights, by invading Guess' right to select his method of practice and invading his patients' rights to their choice of treatments. We disagree on both points. Regarding Guess' ability to select his method of practice, "there is no right to practice medicine which is not subordinate to the police power of the states." *Lambert v. Yellowsley*, 272 U.S. 581, 596, 71 L. Ed. 422, 429 (1926) (citing cases). Further, the Board's decision does not deprive Guess of his privilege to practice medicine, it simply limits his methods of treating patients to those which conform to the acceptable and prevailing standards of medical practice in North Carolina. Regarding Guess' claim that the Board's decision invades his patients' right to select the treatment of their choice, we initially note that he has no standing to raise his patients' privacy interests in this regard. *See Stanley, Edwards, Henderson v. Dept. Conservation & Development*, 284 N.C. 15, 28, 199 S.E.2d 641, 650 (1973) (citing cases), *limited on other grounds by Madison Cablevision v. City of Morganton*, 325 N.C. 634, 386 S.E.2d 200 (1989). Further, we have recognized no fundamental right to receive unorthodox medical treatment, and we decline to do so now. *See State v. Howard*, 78 N.C. App. 262, 269, 337 S.E.2d 598, 603 (1985), *disc. rev. denied, appeal dismissed*, 316 N.C. 198, 341 S.E.2d 581 (1986).

## V.

[7] Finally, Dr. Guess contends that by denying him the opportunity to practice homeopathy, the Board is exercising unbridled and unconstitutional monopoly power. We disagree. The Board's authority to regulate the practice of medicine creates no unconstitutional monopoly. *See State v. Call*, 121 N.C. 643, 646, 28 S.E. 517, 517 (1897); *State v. Howard*, 78 N.C. App. at 266, 337 S.E.2d at 601.

VI.

The order of the Board of Medical Examiners allowed Dr. Guess to continue practicing medicine so long as he refrained from practicing homeopathy and otherwise conformed to the standards of acceptable and prevailing medical practice in North Carolina. The Superior Court erred in reversing and vacating the Board's decision, and the Court of Appeals erred in its decision affirming the Superior Court. The decision of the Court of Appeals is reversed. This case is remanded to the Court of Appeals for its further remand to the Superior Court, Wake County, for proceedings consistent with this opinion.

Reversed and remanded.

Justice FRYE dissenting.

The underlying and essential question in this case is whether the Board may revoke a physician's license to practice medicine for "unprofessional conduct" under N.C.G.S. § 90-14(a)(6) based on a deviation from "the standards of acceptable and prevailing medical practice" without a finding that the deviation carries with it a potential for harm to the physician's patients or to the public. The Court of Appeals held that the Board may not do so. I agree and therefore dissent from the majority's holding to the contrary.

I believe that the majority has construed subsection (6) of N.C.G.S. § 90-14(a) in a manner inconsistent with its purpose and legislative intent. N.C.G.S. § 90-14(a) provides that the Board shall have the power to deny, annul, suspend, or revoke a physician's license to practice medicine in this State for any of some thirteen reasons. In addition to "unprofessional conduct," a license may be revoked for immoral or dishonest conduct; for producing or attempting to produce an abortion contrary to law; for making false statements to the Board; for being unable to practice medicine with reasonable skill and safety to patients by reason of illness, drunkenness, etc.; for conviction of a crime involving moral turpitude; for making false representations in order to obtain practice, money or anything of value; for advertising or publicly professing to treat human ailments under a system or school of treatment or practice other than that for which the person has been educated; for mental incompetency; for lack of professional competence to practice medicine with a reasonable degree of skill and safety for

patients; for promotion of the sale of drugs, etc., in such a manner as to exploit the patient for financial gain; upon suspension or revocation of a license to practice medicine in another state; or for failure to respond, within a reasonable period of time and in a reasonable manner, to inquiries from the Board concerning any matter affecting the license to practice medicine. Even a cursory review of subsection (6) shows that it is directed to protecting the health and safety of patients and the public. The common thread running through each of these reasons for revocation of a license is the threat or potential for harm to patients and the public.

Subsection (6) of N.C.G.S. § 90-14(a) provides that the Board shall have the power to deny, annul, suspend, or revoke a physician's license for:

> (6) unprofessional conduct, including, but not limited to, any departure from, or the failure to conform to, the standards of acceptable and prevailing medical practice, or the ethics of the medical profession, irrespective of whether or not a patient is injured thereby, or the committing of any act contrary to honesty, justice or good morals, whether the same is committed in the course of his practice or otherwise, and whether committed within or without North Carolina[.]

The majority treats the language "irrespective of whether or not a patient is injured thereby" as meaning irrespective of whether there is an injury or threat of injury caused by the deviation. I do not believe that the legislature so intended. Dr. Guess argues, and I agree, that this language gives the Board authority to act before injury occurs, but does not eliminate the public purpose requirement that the medical practice pose some threat or potential for harm to the public. The phrase "unprofessional conduct" connotes dishonorable or unethical behavior, *In re Wilkins*, 294 N.C. 528, 242 S.E.2d 829 (1978), and, in the context of the statute, means substandard medical practice that cannot be tolerated because of the risk of harm such treatment poses to the public. Subsection (6), like the remainder of section 90-14(a), was enacted for the purpose of regulating the medical profession to protect the public health and safety and not simply to prevent a doctor from being the first one in the State to use a particular medicine or form of healing.

A careful examination of the evidence presented before the Board shows that Dr. Guess' practice of homeopathy is not un-

professional conduct within the meaning of N.C.G.S. § 90-14(a)(6). All of the evidence tended to show that Dr. Guess is a highly qualified practicing physician who uses homeopathic medicines as a last resort when allopathic medicines are not successful. He takes 150 credits of continuing medical education approved by the American Medical Association every three years and from fifty to eighty hours of homeopathic continuing medical education each year. The homeopathic medications prescribed by him are listed in the Homeopathic Pharmacopoeia of the United States and are regulated by the United States Federal Food, Drug and Cosmetic Act. The homeopathic approach is often preferred, in Dr. Guess' words, "primarily because of its well documented safety." This is not a case of a quack beguiling the public with snake oil and drums, but a dedicated physician seeking to find new ways to relieve human suffering. The legislature could hardly have intended this practice to be considered "unprofessional conduct" so as to revoke a physician's license in the absence of some evidence of harm or potential harm to the patients or to the public. Nothing in the record before the Board or this Court justifies so broad a sweep in order to secure the public "against the consequences of ignorance and incapacity as well as of deception and fraud." *See Dent v. West Virginia,* 129 U.S. 114, 122, 32 L.Ed. 623, 626 (1889).

I also disagree with the majority's conclusion that Dr. Guess's evidence presented to the Board concerning the efficacy of homeopathy and its use outside North Carolina was not relevant to the issue before the Board. North Carolina does not and should not exist as an island to itself. The evidence that homeopathy is accepted in other states and in other countries of the world and that it has a beneficial rather than harmful effect certainly ought to be of some significance to the Board and to the citizens of this State concerned about the public health and safety. The majority rejects evidence of the legitimacy of homeopathy in other states and countries throughout the world as being irrelevant because homeopathy is not currently an acceptable and prevailing system of medical practice in North Carolina. This raises the legitimate question of how the acceptable and prevailing practice can be improved in North Carolina if we do not even consider what happens in other states and countries.

Lastly, I disagree with the majority's conclusion that Dr. Guess' remedy lay with the legislature. As I have stated earlier, N.C.G.S. § 90-14(a) is intended to protect the public from harmful or dangerous

practices. In light of this policy, I do not believe that the General Assembly would require a physician to undergo a possibly lengthy wait for legislative action while it is attending to other matters before allowing him to make non-dangerous, beneficial treatments available to members of the public who knowingly consent. Where there is no showing of danger, I do not believe specific legislative approval is a prerequisite to a physician engaging in a practice which is by all indications helpful when used wisely.

I vote to affirm the unanimous decision of the Court of Appeals.