THOMAS W. ARMSTRONG, D.D.S., PETITIONER-APPELLEE v. NORTH CAROLINA STATE
BOARD OF DENTAL EXAMINERS, RESPONDENT-APPELLANT

No. COA97-615

(Filed 7 April 1998)

1. **Physicians, Surgeons, and Other Health Care Professionals § 60 (NCI4th)— dentist—license suspended for hiring unlicensed dentist—mens rea—not required**

The trial court erred when reviewing a decision of the Dental Board to suspend petitioner's license for hiring an unlicensed dentist by concluding that a *mens rea* showing was required. The rule from *State v. Hill*, 31 N.C. App. 733, is controlling; the legislature may deem certain acts harmful to public health, safety, and welfare, absolutely prohibit them, and punish their violation without regard to guilty knowledge.

2. **Physicians, Surgeons, and Other Health Care Professionals § 58 (NCI4th)— unlicensed dentists—prohibition on hiring—rationally related to protection of public health**

The trial court erred by concluding that the Dental Board's suspension of petitioner's license for hiring an unlicensed dentist was not rationally related to the statutory purpose of protecting the public from unlicensed dentists. The legislature could reasonably believe that the practice of dentistry by individuals unlicensed in this state could be a threat to public health and the prohibition on hiring unlicensed dentists furthers this legislative policy because an incentive is created for hiring dentists to ensure that a potential dentist employee is in fact licensed. The fact that the unlicensed dentist here was apparently competent does not change the result.

3. **Constitutional Law § 78 (NCI4th)— dentist's license suspended—not arbitrary and capricious**

The trial court erred by concluding that the action of the Dental Board in suspending petitioner's license for hiring an unlicensed dentist was arbitrary and capricious because the punishment was not rationally related to the statutory purpose.

Appeal by respondent from judgment entered 7 March 1997 by Judge William Z. Wood, Jr. in Stanly County Superior Court. Heard in the Court of Appeals 13 January 1988.

*Bailey & Dixon, L.L.P., by Denise Stanford Haskell and Ralph McDonald, for respondent-appellant.*

*Dozier Miller Pollard & Murphy, by W. Joseph Dozier, Jr., and George Daly, for petitioner-appellee.*

WYNN, Judge.

The issue before us is whether constitutional or common law principles prevent the North Carolina Board of Dental Examiners from sanctioning a dentist who hired a dentist unlicensed in North Carolina to practice in his office, where the Board made no findings as to the hiring dentist's culpable mental state. We hold that the Board may impose sanctions in such a case.

On 29 July 1995, the North Carolina Board of Dental Examiners conducted a hearing to determine whether Thomas W. Armstrong, a dentist licensed to practice in North Carolina, violated N.C. Gen. Stat. § 90-41(a)(13), which prohibits a dentist from employing a dentist unlicensed in North Carolina. After the hearing, the Dental Board issued its Final Agency Decision, finding that:

1. Respondent [Dr. Armstrong] is licensed to practice dentistry in North Carolina and is the holder of License Number 4310, originally issued by the Board on August 1, 1977 and duly renewed through the current year.

2. At all relevant times, Respondent was engaged in the practice of general dentistry in Charlotte, North Carolina.

3. During September of 1994, Respondent employed Barry Conger, D.D.S. to practice dentistry as an associate dentist in Respondent's practice.

4. Between September 12, 1994 and October 17, 1994, Respondent allowed Dr. Conger to practice dentistry as an employee in Respondent's practice.

5. Dr. Conger was not licensed to practice dentistry in North Carolina during September and October of 1994 and has never held a license to practice dentistry in North Carolina.

Based on its conclusion that findings of fact three and four constituted a violation of N.C. Gen. Stat. § 90-41(a)(13), the Dental Board suspended Dr. Armstrong's license for five years. The suspension

involved actual surrender of his license to practice for fourteen days, and a probationary period for the remaining four years and fifty weeks during which he could practice. The conditional return of his license required Dr. Armstrong to perform 160 hours of community service and that he take and pass a jurisprudence exam.

Dr. Armstrong appealed for review to the Stanly County Superior Court. The Superior Court reversed the Dental Board, concluding that "the substantial rights of [Dr. Armstrong] were prejudiced because (1) the action of the Dental Board was erroneous as a matter of law for failure to require that *mens rea* of [Dr. Armstrong] be shown; and (2) that the action of the Dental Board violated the Law of the Land Clause of the North Carolina Constitution, Article I, § 19, and the Due Process Clause of the Fourteenth Amendment to the United States Constitution, and was arbitrary and capricious, because the punishment imposed on [Dr. Armstrong] was not rationally related to the statutory purpose of protecting the public from incompetent dentists." The Dental Board appealed to this Court.

### Preliminary Discussion of the Law

Article 2 of Chapter 90 of North Carolina's General Statutes sets forth regulations concerning the practice of dentistry in North Carolina and provisions governing the activities of the Dental Board. In promulgating article 2, the general assembly specifically declared the importance of the legislation for the people of North Carolina. N.C. Gen. Stat. § 90-22(a) (1997) states that the "practice of dentistry in the State of North Carolina is hereby declared to affect the public health, safety and welfare and to be subject to regulation and control in the public interest."

The task of protecting the public and promoting the public interest in the competent practice of dentistry has been entrusted by the legislature to the Dental Board. *See* N.C. Gen. Stat. § 90-22(b) (1997) (stating that the Dental Board is "the agency of the State for the regulation of the practice of dentistry in this State."). This legislative intent to entrust the Dental Board with the oversight and regulation of the practice of dentistry is evident throughout the article. In particular, N.C. Gen. Stat. § 90-29(a) (1997) provides that "[n]o person shall engage in the practice of dentistry in this State, or offer or attempt to do so, unless such person is the holder of a valid license or certificate of renewal of license duly issued by the North Carolina State Board of Dental Examiners."

In carrying out its public function, N.C. Gen. Stat. § 90-41 (1997) authorizes the Dental Board to take disciplinary action against licensed dentists for various actions and omissions. Specifically relevant to this case is N.C. Gen. Stat. § 90-41(a)(13) (1997), which authorizes the Board to sanction a dentist who "[h]as employed a person not licensed in this State to do or perform any act or service, or has aided, abetted or assisted any such unlicensed person to do or perform any act or service which under this Article or under Article 16 of this Chapter, can lawfully be done or performed only by a dentist or a dental hygienist licensed in this State." Under the statute, the Board may impose sanctions if it "is satisfied" that such employment or assistance has occurred. Upon such a finding, it may, among other sanctions, "[r]evoke or suspend a license to practice dentistry" and "[i]nvoke such other disciplinary measures, censure, or probative terms against a licensee as it deems fit and proper." N.C. Gen. Stat. § 90-41(a) (1997).

When reviewing a final agency decision of the Board, the Superior Court sits as an appellate court. *Little v. Board of Dental Examiners*, 64 N.C. App. 67, 69, 306 S.E.2d 534, 536 (1983). This Court and the superior court employ the same standard of review. *Dorsey v. UNC-Wilmington*, 122 N.C. App. 58, 62-63, 468 S.E.2d 557, 560, *cert. denied*, 344 N.C. 629, 477 S.E.2d 37 (1996).

### Discussion of the Issues

### I.

[1] We first discuss our conclusion that the trial court erred by finding that "the action of the Dental Board was erroneous as a matter of law for failure to require that *mens rea* of [Dr. Armstrong] be shown."

An alleged error in statutory interpretation is an error of law, *Best v. N.C. State Board of Dental Examiners*, 108 N.C. App. 158, 161, 423 S.E.2d 330, 332 (1992), *disc. review denied*, 333 N.C. 461, 428 S.E.2d 184 (1993), and thus our standard of review for this question is *de novo. Brooks v. Ansco & Associates*, 114 N.C. App. 711, 716, 443 S.E.2d 89, 91 (1994).

Under our canons of statutory interpretation, where the language of a statute is clear, the courts must give the statute its plain meaning. *Burgess v. Your House of Raleigh*, 326 N.C. 205, 209, 388 S.E.2d 134, 136 (1990). Section 90-41(a)(13) makes no mention of a *mens rea* requirement.

ARMSTRONG v. N.C. STATE BD. OF DENTAL EXAMINERS

[129 N.C. App. 153 (1998)]

The Dental Board argues that we should give effect to the plain meaning of the statute and require nothing further. First, it points out that North Carolina Courts have recognized that deference is owed to an agency's interpretation of a statute, *see MacPherson v. City of Asheville*, 283 N.C. 299, 307, 196 S.E.2d 200, 206 (1973), and that the Dental Board has determined that it is in the public interest that knowledge need not be shown before a dentist is disciplined under section 90-41(a)(13). Next, it argues that the legislature evidenced a purpose to not require a *mens rea* showing by its omission from the statute, that such a purpose is permissible under our common law principles, and that we should recognize and enforce this legislative intent. Finally, it argues that in similar situations we have held that no *mens rea* showing was required.

In response, Dr. Armstrong brings forth several justifications for the trial court's ruling. First, he contends that the general common law rule is that knowledge must be shown before a license may be revoked for hiring an unlicensed employee. He also argues that because of the penal nature of license revocation statutes, we should follow "[o]ur traditional rule . . . that when the General Assembly does not specify whether guilty knowledge, or *mens rea* is required, the necessity of its existence will nonetheless be implied." *State v. Atwood*, 290 N.C. 266, 273, 225 S.E.2d 543, 547 (1976) (Exum, J., concurring). He further cites a decision of the Texas courts, *Texas State Bd. of Dental Examiners v. Friedman*, 666 S.W.2d 363 (Tex. App. 1984), which held that knowledge had to be shown before a dentist could be disciplined under a Texas statute similar to the one of present concern. Finally, Dr. Armstrong cites to *Poultry Co. v. Thomas*, 289 N.C. 7, 220 S.E.2d 536 (1975), for support of his assertion that North Carolina jurisprudence does not allow suspension of a professional license for an innocent mistake of fact which was not shown to have caused harm.

In *State v. Hill*, this Court quoted the following with approval:

[t]he legislature may deem certain acts, although not ordinarily criminal in themselves, harmful to public safety, health, morals, and the general welfare, and by virtue of its police power *may absolutely prohibit them*, either expressly or impliedly by omitting all references to such terms as 'knowingly', 'wilfully', 'intentionally', and the like. Such statutes are in the nature of police regulations, and it is well established that the legislature may for the protection of all the people, punish their violation *without regard to the question of guilty knowledge* . . . .

1 Burdick, *Law of Crime* § 129j (1946) (emphasis added), *quoted in State v. Hill*, 31 N.C. App. 733, 735, 230 S.E.2d 579, 580 (1976), *disc. review denied*, 292 N.C. 267, 233 S.E.2d 394 (1977).

It is true that for criminal offenses, "[o]ur traditional rule . . . is that when the General Assembly does not specify whether guilty knowledge, or *mens rea* is required, the necessity of its existence will nonetheless be implied." *State v. Atwood*, 290 N.C. 266, 273, 225 S.E.2d 543, 547 (1976) (Exum, J., concurring). Furthermore, in *Poultry Co. v. Thomas*, 289 N.C. 7, 200 S.E.2d 536 (1975), our Supreme Court did indicate that a *mens rea* showing was required for crimes other than petty offenses with light punishment and for any crime involving moral delinquincy. *See id.* at 14-15, 221 S.E.2d at 541-42. However, we disagree with Dr. Armstrong that those cases require a *mens rea* showing in this case.

Even conceding the punitive aspects of a license revocation, *Atwood*, as it was discussing criminal prosecutions, is distinguishable from the present case which concerns regulation of a profession in the interest of the public welfare. Similarly, in *Thomas*, a case whose underlying action was a negligence suit arising out of an automobile accident, the Court was concerned with violations of a criminal statute imposing minor penalties for driving violations. The present case is not a criminal prosecution, but rather concerns regulation of a profession. Further, the *Thomas* Court pointed out that "[b]oth federal and state court have specifically held that it is not a violation of due process to punish a person for certain crimes related to the public welfare or safety even when the person is without knowledge of the facts making the act criminal. This is particularly so when the controlling statute does not require the act to have been done knowingly or willfully." *Id.* at 14, 220 S.E.2d at 541-42.

Our General Assembly has stated that the "practice of dentistry in the State of North Carolina is hereby declared to affect the public health, safety and welfare and to be subject to regulation and control in the public interest." N.C. Gen. Stat. § 90-22 (1997). The General Assembly also explicitly stated that it is "a matter of public interest and concern that . . . only qualified persons be permitted to practice dentistry in the State of North Carolina," *id.*, and that the Board is "the agency of the State for the regulation of the practice of dentistry in this State." N.C. Gen. Stat. § 90-22(b) (1997). Accordingly, we believe that the previously quoted rule from *State v. Hill* is controlling and therefore we do not agree that common law principles mandate a *mens rea* showing in this case.

Furthermore, in construing a similar statute we have concluded that no *mens rea* showing was required. In *Swisher v. American Home Assurance Co.*, 80 N.C. App. 718, 343 S.E.2d 288 (1986), *appeal dismissed and disc. review denied*, 318 N.C. 420, 349 S.E.2d 606 (1986), we held that there was no requirement that a psychologist knew that he was employing an unlicensed individual before he was in violation of statutes which made it a misdemeanor for a psychologist to employ a psychologist who did not posses a valid license.

Additionally, although the final interpretation of a statute is the province of the courts, *see In re Community Association*, 300 N.C. 267, 275, 266 S.E.2d 645, 651 (1980), we have traditionally given some deference to an agency's right to interpret the statutes which it administers. *See MacPherson v. City of Asheville*, 283 N.C. 299, 307, 196 S.E.2d 200, 206 (1973).

Accordingly, we disagree with Dr. Armstrong and the trial court that the Dental Board cannot punish a dentist without showing that he or she knew that the person employed was unlicensed. We conclude that the trial court erred by concluding that a *mens rea* showing was required.

## II.

**[2]** We next discuss our conclusion that the trial court erred by finding that "the action of the Dental Board violated the Law of the Land Clause of the North Carolina Constitution, Article I, § 19, and the Due Process Clause of the Fourteenth Amendment to the United States Constitution . . . because the punishment imposed on Petitioner was not rationally related to the statutory purpose of protecting the public from incompetent dentists."

"[T]here is no right to practice medicine which is not subordinate to the police power of the states." *Lambert v. Yellowsley*, 272 U.S. 581, 596, 71 L. Ed. 422, 429 (1926), *quoted in In re Guess*, 327 N.C. 46, 57, 393 S.E.2d 833, 839 (1990), *cert. denied*, 498 U.S. 1047, 112 L. Ed. 2d 774 (1991). It is well-settled that "the State possesses the police power in its capacity as a sovereign, and in exercise thereof, the Legislature may enact laws, within constitutional limits, to protect or promote the health, morals, order, safety, and general welfare of society." *State v. Ballance*, 229 N.C. 764, 769, 51 S.E.2d 731, 734 (1949); *see also Barsky v. Board of Regents*, 347 U.S. 442, 449, 98 L. Ed. 829, 838 (1954) ("It is elemental that a state has broad power to establish and enforce standards of conduct within its borders relative

to the health of everyone there. It is a vital part of a state's police power. The state's discretion in that field extends naturally to the regulation of all professions concerned with health."). This power is as extensive as is necessary for the protection of the public health, safety, morals, and general welfare. *A-S-P Associates v. City of Raleigh,* 298 N.C. 207, 213, 258 S.E.2d 444, 448 (1979). As the North Carolina Supreme Court has said, "the state has the power to do whatever may be necessary to protect public health, safety, morals, and the general welfare." *Treants Enterprises, Inc. v. Onslow County,* 320 N.C. 776, 778, 360 S.E.2d 783, 786 (1987). The United States Supreme Court has also expressed this view. *See Dent v. West Virginia,* 129 U.S. 114, 122, 32 L. Ed. 623, 626 (1889) ("The power of the State to provide for the general welfare of its people authorizes it to prescribe all such regulations as, in its judgment, will secure or tend to secure" such benefits.).

However, whenever the State exercises its police power, there is necessarily a deprivation of individual liberty. *In re Hospital,* 282 N.C. 542, 550, 193 S.E.2d 729, 735 (1973). As a result, "the legislative power is not unlimited, but is subject to specific limitations imposed by the Constitution of this State and the Constitution of the United States." *Indemnity Co. v. Ingram, Comr. of Insurance,* 290 N.C. 457, 466, 226 S.E.2d 498, 504 (1976).

Both the federal due process clause and the North Carolina constitution's Law of the Land Clause, article 1, section 19, limit the State's police power. *See McNeill v. Harnett County,* 327 N.C. 552, 398 S.E.2d 475 (1990). If no fundamental right is implicated, under federal due process law a governmental action must pass the so-called "minimal scrutiny" test: whether the challenged action has a legitimate purpose and whether it was reasonable for the legislature to believe that the statute would achieve that purpose. *Western & Southern L.I. Co. v. Bd. of Equalization,* 451 U.S. 648, 68 L. Ed. 2d 514 (1981).

"The term 'law of the land' is synonymous with 'due process of law.'" *Ballance,* 229 N.C. at 769, 51 S.E.2d at 734. The law of the land prohibits police regulations if they are not "rationally related to a substantial government purpose." *Treants Enterprises,* 320 N.C. at 778-79, 360 S.E.2d at 785; *see also In re Hospital,* 282 N.C. at 551, 193 S.E.2d at 735 (stating that for a valid exercise of the police power the proposed restriction must have a reasonable relationship to the evil sought to be remedied.).

ARMSTRONG v. N.C. STATE BD. OF DENTAL EXAMINERS

[129 N.C. App. 153 (1998)]

The restraint of the law of the land clause on the State's police power is, however, "flexible" in nature. *McNeill v. Harnett County*, 327 N.C. at 564, 398 S.E.2d at 482. Whether the State's exercise of its police power "is a violation of the Law of the Land Clause or a valid exercise of the police power is a question of degree and of reasonableness in relation to the public good likely to result from it." *In re Hospital*, 282 N.C. at 550, 193 S.E.2d at 735. Furthermore, "[w]hen the most that can be said against [an ordinance] is that whether it was an unreasonable, arbitrary or unequal exercise of power is fairly debatable, the courts will not interfere. In such circumstances the settled rule seems to be that the court will not substitute its judgment for that of the legislative body charged with the primary duty and responsibility of determining whether its action is in the interest of the public health, safety, morals, or general welfare." *In Re Appeal of Parker*, 214 N.C. 51, 55, 197 S.E. 706, 709 (1938).

The parties agree that the Dental Board's action is subject to minimal, or "rational relationship" scrutiny under both the federal and North Carolina's constitutions. Under both constitutions, the Dental Board's action was permissible if it was rationally related to the legislation's purpose.

The Dental Board argues that the trial court erred when it concluded there was no rational relationship between the statute's purpose and the Dental Board's action. First, the statute has the legitimate purposes of prohibiting the employment of unlicensed dentists and maintaining the integrity of the licensing system. Second, the legislature could have reasonably believed that the statute would promote these ends by placing the burden to determine whether employees are properly licensed on the hiring dentist. Such an individual is in the best position to ensure that employees are properly licensed, and it is not unreasonable or irrational to require a hiring dentist to ensure that employees are properly licensed. The Dental Board further argues that if due diligence is exercised by a dentist, then the dentist can insulate him or herself from liability.

In response, Dr. Armstrong argues that as applied in this case section 90-41(a)(13) does not have a reasonable connection to the statutory purpose behind the Dental Practice Act, that "only qualified persons be permitted to practice dentistry in the State of North Carolina." N.C. Gen. Stat. § 90-22 (1997). He points out that there was no evidence that Dr. Conger, who is licensed as a dentist in two other states, practiced incompetently. Dr. Armstrong further points out that

he was misled by Dr. Conger as to his qualifications and argues that punishing him for "inadvertently" hiring an unlicensed dentist is not a reasonable means for accomplishing the statutory purpose of protecting the public from incompetent dentists.

The Dental Board's action was rationally related to a substantial government purpose. Our Supreme Court has said that "regulation of the medical profession is plainly related to the legitimate public purpose of protecting the public health and safety." *In re Guess*, 327 N.C. 46, 51, 393 S.E.2d 833, 836 (1990), *cert. denied*, 498 U.S. 1047, 112 L. Ed. 2d 774 (1991). The legislature could reasonably believe that the practice of dentistry by individuals unlicensed in this state could be a threat to the public health.

The prohibition on the hiring of unlicensed dentists furthers this legislative policy of protecting the public from incompetent dentists. By placing hiring dentists in peril, an incentive is created for them to ensure that a potential dentist employee is in fact licensed. As the Dental Board presumably only licenses competent dentists, the public welfare is enhanced.

Furthermore, the Dental Board does not have to find a culpable mental state before sanctioning a dentist. It has long been the case that " 'the legislature may for the protection of all the people, punish the[] violation [of public welfare statutes] without regard to the question of guilty knowledge.' " *State v. Hill*, 31 N.C. App. 733, 735, 230 S.E.2d 579, 580 (1976), *disc. review denied*, 292 N.C. 267, 233 S.E.2d (1977) (*quoting* 1 Burdick, *Law of Crime* § 129j (1946)). We cannot say that such a long established understanding is a violation of due process principles.

Furthermore, the fact that Dr. Conger was apparently a competent dentist does not change the result. In *In re Guess*, our Supreme Court was considering a case involving the Board of Medical Examiners.

> *There is no requirement, however, that every action taken by the Board specifically identify or address a particular injury or danger to any individual or to the public.* It is enough that the statute is a valid exercise of the police power for the public health and general welfare, so long as the Board's action is in compliance with the statute.

327 N.C. at 54, 393 S.E.2d at 838 (emphasis added). Our Supreme Court then concluded that this Court "erred in requiring a showing of

potential harm from the particular practices engaged in by Dr. Guess as a prerequisite to Board action . . . ." *Id.*

In sum, we conclude that the trial court erred by concluding that the Board's action was not rationally related to the statute's purpose.

## IV.

[3] Finally, we discuss our conclusion that the trial court erred by concluding that "the action of the Dental Board . . . was arbitrary and capricious . . . because the punishment imposed on Petitioner was not rationally related to the statutory purpose of protecting the public from incompetent dentists."

When an agency's final action is alleged to be arbitrary or capricious, the test is whether the agency action indicates a lack of fair and careful consideration and fails to indicate any course of reasoning and the exercise of judgment. *Watson v. N.C. Real Estate Comm.*, 87 N.C. App. 637, 649, 362 S.E.2d 294, 301 (1987), *cert. denied*, 321 N.C. 746, 365 S.E.2d 296 (1988). Our review of the record indicates no such deficiencies.

In light of our holding in this case, we do not need to consider the Dental Board's contention that the trial court erred by making further findings of fact. The order of the trial court is reversed and the final agency decision of the Board is reinstated.

Reversed.

Judges EAGLES and WALKER concur.